### 6660

### BROOKE v. LAURENS MILLING CO.

1. CONTRACTS—ARBITRATION—ISSUES.—Under contract of purchase of corn containing the stipulation, "West Nashville Public Elevator weights and grades to be accepted as final," the grading by the arbiter must be accepted as final, and issue of grade should not be sent to the jury except in case of proof of gross inferiority.

2. IBID.—WAIVER.—Purchaser accepting a lot of corn waives the right to allege obvious inferiority of quality.

3. IBID.—DAMAGES.—In case of contract of purchase of corn to be delivered in installments with right to seller to sell same on account of buyer, if he refuse to accept it, the measure of damages is the difference between the market value on day it should have been accepted and the price to be paid. Here the purchaser notified seller before day fixed for acceptance he would not accept the corn, and the seller then sold it. Such sale cannot enter into the computation.

Before PURDY, J., Laurens, January, 1907.    Reversed.

Action by George W. Brooke against Laurens Milling Co. From judgment for defendant, plaintiff appeals.

*Messrs. Dial & Todd* and *F. P. McGowan,* for appellant, cite: *Defendant cannot now plead inferiority in grade after accepting corn:* 34 S. C., 508; 37 S. C., 7. *Parol evidence should have been admitted to explain the phrase, "West Nashville Public Elevator weights to be final":* 79 S. W., 363; 3 Current Law, 1348-9; 5 Current Law, 1322. *Certificate of weights could not be varied by parol:* 9 Cyc., 763. *Difference between contract price, with freight and expenses added, and market price is measure of damages:* 68 S. C., 363; 37 S. C., 7; 10 S. C., 97; Chev., 153.

*Messrs. Simpson, Cooper & Babb,* contra, cite: *Defendant had the right to set up by counterclaim the difference between the contract price and the true value:* 74 S. C., 202; *Kaufman Case,* 37 S. C.; 43 S. C., 257.

September 18, 1907. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The plaintiff and defendant in January, 1904, made a contract in writing, by which it was agreed plaintiff should sell and deliver to defendant, at specified times, "9,600 bushels, bulk, No. 2 white corn," and defendant should pay for the corn in specific installments. The contract was in these words: "This witnesseth that George W. Brooke, of Atlanta, Ga., has this day sold to Laurens Milling Co., of Laurens, S. C., 9,600 bushels, bulk, No. 2 white corn, at          per bushel, delivered at Laurens, S. C.; said corn to be stored with the Steel Elevator and Storage Co., of West Nashville, Tenn., and carrying charges of one cent per bushel per month, or fraction of a month, are to be paid by said Laurens Milling Co., in addition to the above price, beginning April 1st, 1904. Delivery is to be made within fifteen days after receipt by said Brooke of order therefor by said Laurens Milling Co.: *Provided, however,* That if failure to deliver within the usual time is occasioned by failure of the railroads to furnish cars therefor, or transport, same shall not be chargeable to said Brooke. Title to said corn shall pass on delivery hereunder. West Nashville Public Elevator Weights and Grades to be accepted as final. Said Laurens Milling Co. has paid said Brooke a margin of 10 cents per bushel on said corn by notes of $960.00, June 1st, 1904; July 1st, 1904; payable at the ............ of ............, which amount of said notes is to be deducted from the last invoice when the grain is shipped, or to such amount as will balance the account, and it is agreed, if said Laurens Milling Co. does not order out said corn as per these terms of contract, said Brooke may, at his option, sell said grain for account of said Laurens Milling Co. Shipments to be made as per memorandum on back of this sheet." Indorsed on it was the following memorandum:

"2,400 bus. No. 2 White Corn, to be shipped March. .   68¾
    1 car March 1st, 1 car March 15th, 1 car March
      20th.

2,400 bus. No. 2 White Corn, to be shipped April. . .   69¾
    1 car April 1st, 1 car April 15th, 1 car April 20th.

2,400 bus. No. 2 White Corn, to be shipped May. . . .   70¾
    1 car May 1st, 1 car May 15th, 1 car May 20th.

2,400 bus. No. 2 White Corn, to be shipped June. . . .   71¾
    1 car June 1st, 1 car June 15th, 1 car June 20th."

The defendant accepted and paid for two carloads of the corn, but refused to accept two other carloads which reached Laurens, the designated place of delivery, on the ground that it was not up to grade; and notified the plaintiff not to ship the remainder. Thereupon the plaintiff sold the corn and brought this action for the difference between the contract price and the price realized on the re-sale.

The substance of the defense is contained in this sentence of the answer: "That instead of shipping the corn of the quality stipulated in the contract, the plaintiff fraudulently shipped corn to the defendant that was damaged, musty and mildewed, and very inferior in all respects to number two white corn, and was unfit for use, and this defendant could not use the same in its business, and upon the arrival of this corn at Laurens the defendant declined to receive the same and immediately so notified the plaintiff on the . . . . . . . . . . day of . . . . . . . . . . . ., 1904, and demanded of the plaintiff the return of the notes given by the defendant to the plaintiff under the said contract, which demand has never been complied with." Evidence was adduced tending to prove the rejected corn was heated and inferior to number two grade when it reached Laurens, and there was also evidence of its liability to become heated and damaged in transportation from Nashville, the place of shipment.

The provision of the contract on which an important question made by the appeal hinges, is this: "West Nashville Public Elevator Weights and Grades to be accepted as final." There is no ambiguity or obscurity in this language.

The grade No. 2 white corn provided for in the contract is a grade of universal trade recognition. It seems perfectly clear the West Nashville Public Elevator was not empowered to make a new standard of corn grading. The general trade grading was to be the standard, but the West Nashville Public Elevator was to inspect the corn tendered for the parties and decide whether it was up to the trade standard of No. 2 white. The plaintiff produced certificates from M. L. Coggins, grain inspector at the West Nashville Public Elevator, that he had inspected each of the carloads of corn and that all of them contained "corn, grade No. 2 white"; and Coggins confirmed these certificates by his testimony as a witness.

The Circuit Judge submitted in his charge as one of the issues decisive of the case, whether in the opinion of the jury as formed from the evidence, the corn was or was not in fact of number two grade when loaded at Nashville. This, we think, was error, because the parties themselves had agreed in the contract that the grading of the Elevator Company should be final. In such case the true rule as fixed by authority from which we can find no dissent, is that the decision of the arbiter on whom the parties have agreed is conclusive when reached in the exercise of his honest judgment.

This rule was applied to the decision of arbitrators appointed by the parties in *Rounds* v. *Aiken Mfg. Co.,* 58 S. C., 299, 36 S. E., 714, and earlier cases in this State; to the decision of an engineer under a contract to dig a well, in *Omaha* v. *Hammond,* 94 U. S. 98, 24 Ed., 70; to that of a meat inspector under contract to deliver meat of a certain grade, in *Nofsinger* v. *Ring* (Mo.), 36 Am. Rep., 456; to that of architects and engineers under contracts for the construction of buildings or railroads, in *Sweeney* v. *U. S.,* 109 U. S., 618, 27 L. Ed., 1053; *Chicago, etc., R. R. Co.* v. *Price,* 138 U. S., 185, 34 L. Ed., 917; *Kennedy* v. *Poor* (Penn.), 25 Atl., 119; *McAlpine* v. *Trustees* (Wis.), 78 N. W., 173; *Kilgore* v. *N. W. T. Baptist Soc.* (Tex.), 35

S. W., 145; *Seim* v. *Krause* (S. D.), 83 N. W., 583; *East Tenn., etc., Ry. Co.* v. *Central Lumber Mfg. Co.* (Tenn.), 32 S. W., 635; *Thompson* v. *Bradbury* (Idaho), 51 Pac., 758; *Hot Springs Co.* v. *Maher* (Ark.), 3 S. W., 639.

The reason for holding the award of the arbiter selected by the parties final, when reached in the exercise of his honest judgment, seems to be at least as strong as the reason for giving such effect to the return of commissioners in partition. In stating the principle applicable to the return of commissioners, the Court says in *Aldrich* v. *Aldrich,* 75 S. C., 369, 374: "Even if it should be conceded that a preponderance of the evidence outside the report of the commissioners on the lands given Mrs. Richardson and Mrs. Duncan was too high, it was proper to sustain the valuation made by the commissioners, unless the Court was satisfied the valuation was so grossly incorrect and unequal as to warrant an inference that the commissioners acted from an unfair and improper motive. It is a matter of common knowledge that men of experience may differ as to the value of lands. So long, therefore, as the valuation by commissioners may be accounted for on this ground, it should be sustained; and it is not sufficient to overthrow a valuation by commissioners, merely to show that in the opinion of other honest and experienced men the true value is higher or lower than that made by commissioners under oath."

There is no doubt under the authorities, proof may be made of gross inferiority of the work done, or material used, or goods delivered, or of gross over or under valuation, because such proof tends to show that the arbiter agreed on did not exercise his honest judgment, or he must have come to a different conclusion. Nevertheless the issue always remains the same, did the arbiter exercise his honest judgment, not whether the jury or the witnesses would have come to a different conclusion in the exercise of their judgment. To give the finding of the arbiter selected by the parties less force would be to deny the right of the parties to contract. If, therefore, the inspector at the West Nashville

Public Elevator inspected the corn and in the exercise of his honest judgment graded it number two white, the plaintiff was entitled to recover, and it was immaterial that the jury might have been of the opinion that the judgment of the inspector was not sound and the corn was not in fact up to the grade number two white.

The plaintiff demurred to the two counterclaims set up in the answer on the ground that the allegations were not sufficient to constitute counterclaims and the demurrer was overruled. The first counterclaim is as follows: "That the defendant received and used part of the corn shipped to it by the plaintiff, and paid the plaintiff therefor the price stipulated in the contract, but the same was found to be of a very inferior quality, and not number two corn, and was worth much less than the corn which the plaintiff contracted to deliver to the defendant, to wit: The sum of two hundred and ninety-seven and 50-100 dollars." By acceptance of the goods the defendant waived the right to allege inferiority of quality which was obvious to him. *Woods* v. *Cramer,* 34 S. C., 516, 13 S. E., 660; *Vanderhorst* v. *McTaggart,* 2 Bay, 498; *Mitchell* v. *McBee,* 1 McM., 267; and there is no allegation that the inferiority was latent. In *Ellison* v. *Johnson,* 74 S. C., 202, the question here made was not discussed nor involved. The point there was the measure of damages for breach of warranty in the sale of a quantity of flour. Nothing was decided as to the effect of the acceptance of defective goods when the defects were not latent, and the goods open to examination as the corn was in this case. The demurrer to this counterclaim should have been sustained. On the same point there was error in the charge as set out in the twelfth exception.

In the complaint, plaintiff alleges that when defendant notified him that it would not accept the remainder of the purchase, six thousand two hundred and eighty-six bushels, he resold it as authorized by the contract at a net loss of three and one-fourth cents a bushel, aggregating two hundred four dollars and twenty-nine

cents. By the second counterclaim, the defendant alleges this sale was made at three cents a bushel less than the market price at Laurens on the day of the sale, and asks judgment for one hundred eighty-eight dollars and fifty-eight cents on this ground. To determine whether this counterclaim was subject to demurrer, it is necessary to state the rights of the plaintiff under this clause of the contract: "and it is agreed if said Laurens Milling Company does not order out said corn as per these terms of contract, said Brooke may at his option resell said grain for account of said Laurens Milling Co." If defendant, without such legal excuse as would release him from the contract, notified plaintiff the remainder of the corn would not be accepted, this gave plaintiff the right to consider the contract breached and to sue for damages immediately, without waiting for the time agreed on for the delivery of all the installments to arrive. *Payne* v. *Melton,* 67 S. C., 235, 45 S. E., 154; *Ellison* v. *Johnson, supra; Hochster* v. *De la Tour,* 22 L. J. Q. B., 455, 6 Eng. Rul. Cases, 576; *Roper* v. *Johnson,* 23 Eng. Rul. Cases, 545, and note; *Roehm* v. *Horst,* 178 U. S., 1, 44 Ed., 853; 24 Cyc., 1124; 94 Am. St. Rep., 120, note.

The damages in such case are to be estimated as of the date when the contract was to be performed, not the date of the repudiation. The rule is thus stated in *Roper* v. *Johnson, supra:* "The general rule as to damages for the breach of a contract is, that the plaintiff is to be compensated for the difference of his position from which it would have been if the contract had been performed. In the ordinary case of a contract to deliver marketable goods on a given day, the measure of damages would be the difference between the contract price and the market price on that day. Now, although the plaintiff may treat the refusal of the defendant to accept or deliver the goods before the day for performance as a breach, it by no means follows that the damages are to be the difference between the contract price and the market price on the day of the breach. It appears to me that

what is laid down by Cockburn, Ch. J., in *Frost* v. *Knight,* in the Exchequer Chamber (L. R. 7 Ex. 11), involves the very distinction which I am endeavoring to lay down, viz., that the election to take advantage of the repudiation of the contract goes only to the question of breach, and not to the question of damages; and that, when you come to estimate the damages, it must be by the difference between the contract price and the market price at the day or days appointed for the performance, and not at the time of breach." After full discussion, the Supreme Court of the United States adopted this view in *Roehm* v. *Horst, supra,* and it is now generally accepted in this country. Evidently if the trial takes place before the time for performance has arrived, there is difficulty in estimating with precision the loss of the plaintiff on the day of performance yet in the future. The difference in the market price on the day of performance and the price fixed in the contract is not available as a measure because: it is impossible to know the future market price. In the case last cited, Chief Justice Fuller thus states the principle in which the damages in such circumstances are to be estimated: "As to the question of damages, if the question is not premature, the rule is applicable that plaintiff is entitled to compensation based, as far as possible, on the ascertainment of what he would have suffered by the continued breach of the other party down to the time of complete performance, less any abatement by reason of circumstances of which he ought to have availed himself." This difficulty, however, is not present here because the time fixed by the contract for delivery had arrived before the trial. If the time of delivery arrives before the trial, the general rule that the measure of damages is the difference between the contract price and the market price at the time the goods ought to have been accepted by the purchaser is applicable. This is the rule here. The plaintiff, it is true, had the option to resell the corn for defendant's account, but according to the principle laid down in the numerous cases above cited, he could not charge the defendant with a loss on a resale

made before the time specified in the contract for delivery. The contract only gave the plaintiff the option to substitute for the market price on the day appointed for performance, the price realized by a resale on that day. Therefore, while the plaintiff under his option could hold the corn and resell it at the time fixed for acceptance or not, as he saw fit, the defendant was in nowise bound by the result of a resale made before the day fixed for performance. The resale by the plaintiff was of no effect, and his option to resell on the arrival of the day fixed for performance of the contract by defendant remains unexercised. The measure of the damages, therefore, would be the difference between the market price of the corn on the day the contract contemplated the acceptance of the corn by the defendant, and the price which the defendant contracted to pay.

The second counterclaim is for the difference between the price of 6,286 bushels of corn realized by the resale, made before the time for delivery, and the market value on the day of the resale. If the defendant breached the contract and threw the corn on the plaintiff's hands, then as we have seen he is liable for the contract price less the market value of the corn on the day it was to be delivered. The plaintiff having sold the six thousand two hundred and eighty-six bushels before the time fixed for acceptance, neither the amount realized at this resale nor the market price on the day of resale enter into the case. For these reasons the demurrer to the second counterclaim also should have been sustained.

The complaint alleges in effect a breach of the contract by defendant in refusing to pay for so much of the corn as was shipped and accepted, in refusing to accept and pay for so much of the corn as was shipped to defendant and refused after it reached Laurens, and in notifying plaintiff by letter it would refuse to receive or pay for the six thousand two hundred and eighty-six bushels unshipped. As to the alleged breach in refusing to take the six thousand two hundred and eighty-six bushels unshipped corn, the complaint incorrectly alleges the defendant's liability to be the difference between

the contract price and the amount realized on resale made before the time for delivery had arrived, instead of the true measure of liability; namely, the difference between the contract price and the market value on the day the corn was to be accepted. But as there was no objection made to the complaint by demurrer or otherwise this mistake has not been considered. It is proper to say if defendant meant by his second counterclaim to admit that the agreement contemplated an option to the plaintiff to resell the six thousand two hundred and eighty-six bushels *at once* on its notice that it would refuse to accept, the counterclaim would still be demurrable. For if the resale is to be considered to have been made according to the contract, then under the contract it was "for account of Laurens Milling Company"; and this altogether negatived the idea that the plaintiff was to guarantee the market price.

Of course, these conclusions as to the complaint and the counterclaims are announced without prejudice to the parties to move to amend the complaint or counterclaims as they may be advised in accordance with the principles we have stated.

No specific reference to the exceptions to the charge are deemed necessary, as in the discussion we have endeavored to cover them all. Under the principles we have announced, the exceptions as to the exclusion and admission of testimony are overruled.

The judgment of this Court is that the judgment of the Cirucit Court be reversed and the cause remanded to that Court for a new trial.