7391

## BROOKE v. LAURENS MILLING CO.

1. CONTRACTS—SET OFF.—In a suit to enforce a contract for a lot of corn, a portion only having been delivered, defendant may set off against contract price difference in value of corn on day of purchase and the date to be delivered.

2. IBID.—ISSUES—ARBITRATION.—In this case under the evidence, it was proper to submit to jury the issue whether the inspector exercised his honest judgment in inspecting the corn.

Before MEMMINGER, J., Laurens, January Term, 1909. Affirmed.

Action by George W. Brooke against Laurens Milling Company. From judgment for defendant, plaintiff appeals.

*Messrs. Dail & Todd* and *F. P. McGowan,* for appellants.

*Messrs. Simpson, Cooper & Rabb,* contra.

November 26, 1909.　The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. This is the second appeal. The first appeal is reported in 78 S. C., 200, and resulted in a reversal of the verdict and judgment for defendant. On the second trial the verdict was for defendant and plaintiff again appeals.

We adopt, with some alteration, the following full and clear statement from the argument of appellant:

The complaint is based upon a contract in writing made by George W. Brooke and Laurens Milling Company, on January 16, 1904, whereby plaintiff was to store in a public elevator plant, Nashville, Tenn., 9,600 bushels of No. 2 white corn in bulk for the defendant, to be delivered to defendant, at Laurens, S. C., in four equal monthly quantities of 2,400 bushels for the months of March, April, May and June, 1904, for which defendant agreed to pay plaintiff 68 3-4 cents per bushel for the 2,400 bushels, to be ordered out for March, and one cent per month additional for the remainder of the corn, one cent per month being stipulated as storage. The contract also provided that the weights and grades of West Nashville Public Elevator should be accepted by both parties as final, and that upon failure of defendant to order out said corn as per contract, the plaintiff had the option to sell said corn for the account of Laurens Milling Company, and that delays in shipments by negli-

gence or defective instrumentalities of railroads should not be chargeable to plaintiff.

The plaintiff shipped two cars of the corn under the March delivery, which were accepted by the defendants, and paid for. The plaintiff shipped two other cars of corn, comprising the remainder of the March delivery and a part of the April delivery, but when this shipment arrived at Laurens they were rejected by defendant. At this time the defendant notified the plaintiff not to ship any more corn. Whereupon the plaintiff brought this action for breach of the contract in not accepting the shipped portion, and for not ordering out the unshipped portion, claiming the difference between the contract price and the price for which the corn was sold, to wit, $635.36. The two cars rejected at Laurens were sold for 40 and 50 cents per bushel, and the unshipped corn was sold at Nashville for 66½ cents per bushel, basis Laurens, S. C.

The answer of defendant was in substance that the plaintiff shipped corn to defendant inferior in quality and grade to that stated in contract, and fraudulently shipped corn that was musty and mildewed, and alleged a rescission of the contract by defendant, and set up also four counterclaims, (1) for $297.50 for loss in quality of the corn accepted by defendant, (2) $188.58, the difference between the contract price and the price for which plaintiff sold the 6,286 bushels of the unshipped corn after defendant's rescission of contract; (3) for $378, the difference between the contract price and the market price on the 6,286 bushels of unshipped corn at the time contracted to be delivered; (4) for $337.52, the difference between the contract price and the selling price of corn at the time defendant rejected the two cars of corn at Laurens, S. C.

The first two counterclaims were rejected by Judge Memminger because they were identical to the counterclaims disallowed in the former appeal of this case, but as to

the third counter claim his Honor, Judge Memminger, over-ruled the demurrer.

Appellant alleges error in his Honor, the trial Judge, in refusing to sustain demurrer to third counterclaim, in refusing to charge the jury that the decision of the inspector, N. L. Coggins, was binding as to grade, in charging that the jury could decide on the question of the grade of the corn that was shipped, in charging the jury that they should set off the loss of plaintiff on the shipped portion of the corn against the profit he should have made on the unshipped portion of the corn, and in not charging plaintiff's first and second requests to charge, which are as follows:

1. "Your Honor is requested by the plaintiff to charge the jury that there is no competent testimony impeaching the honesty of N. L. Coggins, the inspector of the corn at Nashville, and that the grading of the corn in this case by the said N. L. Coggins is binding upon the parties.

2. "The plaintiff requests his Honor to charge the jury that the grading of corn by N. L. Coggins, the inspector, was final, and it is immaterial what was the condition of the two cars of corn when they arrived at Laurens, and the defendant was bound to accept the corn when it arrived, and having failed to do so the plaintiff had a right to resell the rejected corn for the account of the defendant, and the plaintiff is entitled to recover the difference in the price of the corn at the contract price of 69¾ cents and the price at which it was sold, to wit: 40 cents and 50 cents per bushel."

1. We think the demurrer was properly overruled.

The reason for this ruling is stated by Judge Memminger as follows: "The Court: Well, the way I look upon it, I do not see that there is any view of the case under which the defendant could recover an absolutely affirmative judgment for money against the plaintiff. This contract has to be regarded in its entirety and it seems to me that if the plaintiff showed a loss on the delivered corn as against the defendant and the defendant could

show that the plaintiff derived a profit from the undelivered corn, or should have derived a profit if he had complied with the rule laid down by the Supreme Court, that they ought to be able to set that off as against the other loss or the loss charged against them on the actually delivered corn, and I suppose that would come under the head of a counterclaim. They could set off that amount against the other. I don't see under any view of the case—do you gentlemen claim that you are entitled to a money judgment against the plaintiff?

"Mr. Cooper: No, sir; we don't ask for anything against the plaintiff.

"The Court: That is the way I am going to view the case, that one of these may be set off against the other. It might arise by way of defense, directly under the defense, but it is set up in the way of counterclaim, and I think it would be better understood that way. So we will try and go on with the case along those lines and see if we can work it out as we proceed."

It thus appears that the matter in the answer objected to was not sustained as a strict counterclaim, but really as matter of defense. The plaintiff is seeking to enforce a contract in its entirety, and the defendant should be allowed to plead any matter which goes to defeat recovery in whole or in part upon such contract.

The contract sought to be enforced gave plaintiff "option to resell said grain for account of said Laurens Milling Company."

On the former appeal the Court held: "As to the alleged breach in refusing to take the six thousand and two hundred and eighty-six bushels unshipped corn, the complaint incorrectly alleges the defendant's liability to be the difference between the contract price and the amount realized on resale made before the time for delivery had arrived instead of the true measure of liability, namely, the difference between the contract price and the market value on the day the

corn was to be accepted," and the Court gave opportunity
to either party to move to amend pleadings in accordance
with the principle stated. Defendant amended answer to
meet this view of the Court and in the counterclaim, which
is the subject of demurrer, sought to hold plaintiff to
account for the market value of the unshipped corn as of
the time it was to be delivered under the contract, which
market value was alleged to be three hundred and seventy
eight dollars more than the contract price.

The manifest purpose was to limit defendant's liability
for loss under the contract treated as a whole, and we think
the answer in this regard was within the principle decided
on the former appeal, and not subject to demurrer.

2. It must also follow that the Court did not err in
charging the jury: "If you find that the loss of Mr. Brooke
upon the cars sent here to Laurens was exactly the same
as his profits, if you find he made a profit on the cars, which
were not sent here, then you just set one off against the
other; and find a verdict for the Laurens Milling Com-
pany, if Mr. Brooke would have lost nothing on the whole
contract. If you find that there was a difference, that he
lost more on the cars that he actually sent here, then he
gained on the undelivered cars, if he gained anything, you
would deduct the one from the other and find a verdict
for the plaintiff for so much, according to whatever profit
he made on the undelivered cars deducted from the loss
on the delivered cars."

While the use of the term "profit" was not strictly accur-
ate, the context makes it manifest that the jury understood
the instruction to mean that they were to consider what was
plaintiff's loss on the contract as a whole, by ascertaining the
difference between the contract price and the market price
at the time delivery was due.

. 3. There was no error in refusing to charge the first and
second requests as above quoted.

The decision of the Court on the former appeal was that the certificate of the inspector as to the grade of the corn was final unless it appears that the inspector did not exercise his honest judgment. Judge Memminger held that there was some testimony tending to show that the inspector did not exercise an honest and impartial judgment.

We cannot say this was error of law.

The testimiony in this connection tended to show that the inspector had previously been in the employment of plaintiff and at the time of the inspection was in the employ of the West Nashville Public Elevator, having the grain in storage, of which corporation plaintiff was not only stockholder but a managing director. Plaintiff testified: "His business is to inspect and grade for the public grain in and out. We buy grain from the West on his inspection, and sell it to the southeast on his inspection. We seldom ever see a car of it ourselves." This all tended to place the inspector in a relation in which his interest as employee might subject him to the imputation of bias in favor of the plaintiff in fixing grades as against purchaser in another State. It appears also that "No. 2 white corn" meant "corn 15-16 white, dry sound and reasonably clean," that such corn would admit of 1-16 red or yellow grains with some few damaged grains; that such corn would not ordinarily damage so as to change grade in ten or fifteen days, owing to weather conditions, that one of the cars of corn shipped and rejected arrived eight or nine days and the other four or five days after shipment and was then found to be damp, mouldy, mildewed and unfit for milling purposes and fit only for hog feed; that the cars in which shipment was made appeared to be in good condition with no appearance of leaks, and there was no evidence of unusually unfavorable weather conditions, and there was testimony that mere absorption of moisture from the atmosphere would not produce such deterioration in such a length of time. It is com-

20—84

mon knowledge that corn loaded in cars in the spring season and subject to sufficient moisture is likely to heat and become damaged. But the vital question was, when did the corn become damp. If during transportation the risk was upon defendant as against the plaintiff, but if it was damp when inspected and loaded, then under this Court's interpretation of the contract, it was a question for the jury to determine whether the failure of the inspector to discover it was the result of an honest mistake of judgment. Tracing the circumstances narrated, if true, back to the shipment, the corn may have been so damp that any inspector exercising reasonable inspection could not have failed to discover its condition and could not have honestly classed it as dry corn.

For the foregoing reasons none of the exceptions can be sustained.

The judgment of the Circuit Court is, therefore, affirmed.