## 8294

### JONES v. ENOREE POWER CO.

ARBITRATION.—An agreement to submit to arbitration all questions of law and fact that may arise under a contract is contrary to public policy and void as an attempt to oust the Courts of jurisdiction and establish in their place a contract tribunal. But an agreement to submit to arbitration any particular issues of fact such as quality of goods, or amount of loss or damage, or the like, leaves the question of ultimate liability open for the Courts and is valid; and if the contract expressly or by implication makes the ascertainment of such fact by arbitration a condition precedent to a right of action, it is a good defense to a suit on the contract that the plaintiff has failed to arbitrate. Such an agreement to arbitrate is not revocable. The contract here to arbitrate the question of damages is construed to make such arbitration a question precedent to an action and not revocable.

MR. CHIEF JUSTICE GARY *thinks all contract agreements to arbitrate possible future differences are revocable.*

Before ALDRICH, J., Spartanburg.    Affirmed.

Action by W. H. Jones against Enoree Power Company. Plaintiff appeals.

*Messrs. Johnson, Nash & Daniel,* for appellant, cite: *Agreements to arbitrate are always revocable:* 3 Eng. Rul. Cas. 357; 7 Am. St. R. 747; 3 Cyc. 610, 613; 1 Enc. 664, 665, 667; 6 Dana 307; 60 N. H. 54; 49 Neb. 280; 31 L. R. A. (N. S.) 679.

*Messrs. Bomar & Osborne,* contra, cite: *Generally on the subject of arbitration and revocation:* 2 Ency. 573, 574, 579; 15 L. R. A. 142; 5 H. L. Cas. 811; 48 S. E. 697; 78 S. C. 203; 38 Am. R. 57; 1 Am. R. 91; 3 Cyc. 595; 51 S. E. 640; 19 L. R. A. (N. S.) 973.

August 12, 1912.    The opinion of the Court was delivered by

Mr. Justice Woods.    By a contract executed 27 February, 1900, W. H. Jones, the plaintiff, and others conveyed to A. B. Groce, his heirs and assigns, "the right and privilege to raise a dam on the Van Patton Shoals, now owned by the Westmoreland estate and S. H. Calvert, to such height as he may desire."    The questions made by this appeal arise under the following stipulation of the contract: "It is further agreed that if the land of the parties above named become in any way injured or damaged by water from said raising of the dam on said Van Patton Shoals on Enoree River, the said A. B. Groce hereby binds himself, his heirs, executors and administrators and assigns to pay the amount of such damage to the said parties above named, their heirs, executors, administrators, and assigns.    The amount of such damages shall be derived at and determined in the following manner, to wit: The said Abraham Cook, W. L. Hudson, P. B. Cooper, T. L. Bragg, R. T. Newman, Mrs. M. T. Newman, R. B. Newman, B. F. Newman, W. H. Jones, J. F. King, O. E. Godfrey, M. E. Jones, W. P. Fowler, their heirs, executors, administrators, or assigns are to select one arbitrator, and the said A. B. Groce, his heirs, executors, administrators, or assigns the other; and these two a third, and if these two cannot agree on a third, then such third arbitrator is to be selected by the clerk of Court, and if he will not then the probate judge, and if he will not select then the third arbitrator shall be selected by the sheriff, and if for any reason the arbitrators cannot be chosen or a majority of them cannot agree, then the amount of such damage is to be determined by action at law.    The award of said arbitrators shall be final and conclusive."

The defendant, Enoree Power Company, acquired by assignment of the contract the rights of Groce.    On July 19, 1907, the plaintiff served on the defendant a notice that he would contest the validity of the contract, and that even if the contract should be declared valid the plaintiff revoked the agreement to arbitrate.    Afterwards the plaintiff, dis-

regarding the agreement, brought this action for damages and injunction, alleging in his complaint "That about the 1st of the year 1908, the defendant, Enoree Power Company, erected a dam across Enoree River, at what is known as Van Patton Shoals, of considerable height just below plaintiff's land; thereby impeding the water in said stream and backing it up into the small stream running through plaintiff's land referred to in such manner as to impede its progress and flow and caused said land to be saturated and sobbed with water and become unfit for cultivation, to the plaintiff's great damage.

"That plaintiff is a farmer and is dependent on the products of his farm for a living; and the defendant, by its said unlawful act, has so impeded the water, as it was wont to flow above, over and along his said lands, as to cause mud, sand and debris, in case of even ordinary freshet, to be deposited in the bed of said stream and out upon the cultivated land, to his damage in the sum of five hundred dollars."

The defendant set up as a defense that the action could not be maintained until the plaintiff had submitted the amount of damage, if any, to arbitration. In reply the plaintiff alleged that the contract was without consideration, that it had been obtained by fraud, and that the agreement to arbitrate had been annulled by revocation.

The verdict of the jury was in favor of the defendant. The Circuit Judge instructed the jury: (1) that if the contract was obtained by fraud it was of no effect, the plaintiff should have a verdict for whatever damage he had proved; (2) that if the contract was not obtained by fraud, then the plaintiff was bound by its terms; that he could not revoke the agreement to arbitrate, and could not maintain his action until he had offered to submit to arbitration the amount of the damage. The issue of fraud is out of the case, having been settled by the jury against the plaintiff.

Before considering the real question involved, it may be well to remark that no question under our Constitution or statute law is involved, for the arbitration provided for in this contract is a common law arbitration falling entirely without the statute enacted by the General Assembly under the mandate of the Constitution. The Constitution provides:

"The General Assembly shall pass laws allowing differences to be decided by arbitrators, to be appointed by the parties who may choose that mode of adjustment," article VI, section 1.

Section 2896 of the Civil Code provides for arbitration agreements as required by the Constitution, but the statute contemplates arbitration of differences which have already arisen, and requires as a part of the contract "each party to enter into bond in double the amount involved to faithfully abide the result of the arbitration." Thus on its face the statute shows, without analysis, that it does not cover agreements contained in written contracts made before any difference has arisen to have any specific question of damage, loss, measurement, or the like arising under the contract settled by arbitration; and certainly it could not be contended for a moment that the statute or the Constitution expresses or implies any intention to take away the common law right to make such an agreement. The indisputable right to make such a common law agreement not falling under the statute was expressly recognized in *Bishop* v. *Valley Falls Mfg. Co.,* 78 S. C. 312.

The exceptions raise two questions: First, was the agreement for arbitration binding on the plaintiff in the absence of fraud? Second, did the plaintiff have the right to revoke the agreement that the amount of damage should be ascertained by arbitration?

We shall not discuss in detail the numerous cases in which the validity of arbitration agreements under the common law and the right to revoke them have been considered.

As to the validity of such contracts, the authorities, with entire unanimity, now lay down this rule. An agreement to submit to arbitration all questions of law and fact that may arise under a contract is contrary to the public policy and void, as an attempt to oust the Courts of their jurisdiction and establish in their place a contract tribunal. But an agreement that any particular issues of fact that may arise, such as quality of goods or amount of loss or damage, or the like, shall be submitted to arbitration, leaves the question of ultimate liability open for the decision of the Courts and is valid; and if the contract expressly or by necessary implication makes the ascertainment of such fact by arbitrators a condition precedent to a right of action, it is a good defense to a suit on the contract that the plaintiff has, without such good excuse, failed to arbitrate. Freedom to contract for arbitration to this extent imports no invasion of the province of the Courts, and there is no ground upon which a right so essential to the convenient transaction of modern business affairs can be denied.

It is true that the case of *Percival* ads. *Herbemont,* 1 McM. 69, decided in 1840, does lay down in very broad language the general rule that a suit may be brought in disregard of any sort of agreement to arbitrate, though it is important to observe that the Court also held in that case that the terms of the contract were too indefinite for enforcement. The case, however, is no longer authority in this State against the rule we have stated as to the validity of arbitration agreements, for in the case of *Maxwell* v. *Thompson,* 15 S. C. 612, decided in 1881, it was held that the agreements to arbitrate are not against public policy. In the still later case of *Brooks* v. *Laurens Milling Co.,* 78 S. C. 200, 58 S. E. 806; 84 S. C. 299, 66 S. E. 294, the Court held an agreement like that in this case binding on the parties. Since the decisions in *Hamilton* v. *Liverpool etc. Ins. Co.,* 136 U. S. 242, 34 L. Ed. 419, and *Hamilton* v. *Home Ins. Co.,* 137 U. S. 370, 34 L. Ed. 704, we think no

authority can be found which questions the following summary of the law made in the latter case:

"A provision in a contract for the payment of money upon a contingency, that the amount to be paid shall be submitted to arbitrators, whose award shall be final as to that amount, but, shall not determine the general question of liability, is undoubtedly valid. If the contract further provides that no action on it shall be maintained until after such an award, then, as was adjudged in *Hamilton* v. *Liverpool & L. & G. Ins. Co.,* above cited, and in many other cases therein referred to, the award is a condition precedent to the right of action. But where no such condition is expressed in the contract, or necessarily to be implied from its terms, it is equally well settled that the agreement for submitting the amount to arbitration is collateral and independent; and that a breach of this agreement, while it will support a separate action, cannot be pleaded in bar to an action on the principal contract."

Numerous authorities following this rule are cited in 19 Cyc. 873; 2 Am. & Eng. Enc. 573; 15 L. R. A. 142; 8 Am. & Eng. Ann. Cases 170.

As to the question of revocation, the language just quoted clearly imports that a valid agreement to arbitrate, made by the parties a condition precedent to the right of action, is not revocable. The general rule undoubtedly is that a contract of arbitration entered into *after the controversy has arisen* is revocable at will at any time before the award has been made, and many cases will be found holding that in general arbitration agreements are revocable even when entered into before any controversy has arisen, but we have found no authority holding an agreement to be revocable when made by the parties before any issue has come between them, that any issue of fact, that may in the future arise, as to a specific point, such as valuation, quality, damage, and the like, shall be determined by arbitration before suit shall be brought. If on any such matters the parties have agreed

that arbitration shall be a condition precedent to the right of action, there is no principle of law which warrants the Courts in dispensing with the condition. The rules we have set out and the principles on which they rest were stated with such convincing clearness and force by Mr. Justice Lamar, now Associate Justice of the Supreme Court of the United States, in *Parsons* v. *Ambos,* (Ga.) 48 S. E. 696, that we quote at length:

"Courts favor the submission of controversies to speedy and inexpensive tribunals of the parties own selection, and generally, in the absence of fraud or palpable mistake, will not interfere with their findings, even though a verdict of a jury, to the same effect might be set aside as contrary to law. But the underlying reason for the recognition of the award is found in the fact that the parties not only agreed to submit their differences, but voluntarily permitted the agreement to be executed, and consented for the award to be actually made by judges of their own selection. The mere executory agreement to submit is generally revocable, otherwise nothing would be easier than for the more astute party to oust the Courts of their jurisdiction. By first making the contract, and then declaring who should construe it, the strong could oppress the weak, and in effect so nullify the law as to secure the enforcement of contracts usurious, illegal, immoral, or contrary to public policy. Civil Code 1895, sec. 3668. A common law agreement, therefore, to submit the validity and effect of a contract, or to submit all matters in dispute, to arbitration, may be revoked by either party at any time before the award. For statutory awards, see Civil Code 1895, sec. 4486. Some of the early cases put this rule upon the ground that a provision whereby the Courts may be ousted of their jurisdiction is repugnant to that other provision, implied in every contract, that its validity and effect shall be determined by the Courts and the law of the land. But whether predicated on the idea that the agreement is repugnant to the contract or to

public policy, the principle is universally recognized that such general submissions are revocable. But this does not mean that nothing can be submitted, nor that the parties may not stipulate that certain facts must be determined by those of their own choosing. For example, in building contracts it is manifest that there must be some one other than a Court or jury to pass on the question as to whether there has been a compliance with the specifications as the building proceeds, or to determine whether the work shall be accepted or rejected as completed. Hence there may be a lawful and irrevocable stipulation for the certificate of the architect or engineer. In contracts of insurance the assessment of the amount of damages may be made a condition precedent to a suit by the insured on the policy. So, too, in contracts of sale, the parties may stipulate for the opinion of an attorney as to the validity of the title, or that the value of the property shall be ascertained by appraisers before either has the right to sue. This fixing of value, however, is a mere incident, and not of the substance of the contract. It rather serves the office of evidence, than of a finding which construes the contract or determines rights. The jurisdiction of the Courts over these substantial matters may be retained by revocation, though the incidental stipulation for valuation is not revocable by the act of the parties, each of whom is bound to do all that is reasonably in his power to procure the appraisement, and must continue to act until he puts the opposite party in the wrong, or make it manifest that no suitable person can be obtained to do the service within a reasonable time. *Hood* v. *Hartshorn,* 100 Mass. 121, 1 Am. Rep. 89."

Applying these rules of law, the question here is whether it appears, from the contract, either expressly or by necessary implication, that as a condition precedent to an action on the contract the amount of damages first should be ascertained by arbitrators. The contract, after providing in detail for the arbitration on the amount of damages from

back water, stipulates, "and if for any reasons the arbitrators cannot be chosen, then the amount of such damages is to be determined by action at law." This clearly means that the amount shall be determined by action *only* in the event the arbitrators cannot be chosen or cannot agree, thus necessarily implying that in the ascertainment of damages, suit could be resorted to only after arbitration had become impossible. For these reasons it seems to me that the contract to arbitrate the amount of damages was valid, that it made arbitration as to such damages a condition precedent to an action, and that it was not revocable. Hence, I think the judgment should be affirmed.

MR. JUSTICE HYDRICK *concurs.*

MR. JUSTICE FRASER *concurs in the result.*

MR. JUSTICE WATTS *absent.*

MR. CHIEF JUSTICE GARY, *dissenting.* This is an action for damages, alleged to have been sustained by the plaintiff, through the wrongful acts of the defendant, in erecting a dam across Enoree River, thereby causing the overflow of his lands. The plaintiff also asks equitable relief, by way of injunction.

The defendant, to whom A. B. Groce subsequently assigned his rights under said contract, denied all the allegations of the complaint, except the corporate existence of the defendant, and plaintiff's ownership of the lands that were overflowed; and set up as a defense, the following contract:

"State of South Carolina, Spartanburg county.

"This contract made and entered into, this 27th day of February, 1900, between W. H. Jones (and other parties therein named) and A. B. Groce, witnesseth.

"The said W. H. Jones (and others), for valuable consideration, hereby made unto the said A. B. Groce, his heirs and assigns, the right and privilege to raise a dam on the Van Patton Shoals * * * to such height as he may desire. It is further agreed, that if the lands of the said parties above named, become in any way injured or damaged, by water from said raising of the dam, * * * the said A. B. Groce binds himself * * * to pay the amount of such damage, to the said parties above named. * * * The amount of such damage shall be arrived at and determined, in the following manner, to wit: The said W. H. Jones, (and others), * * * are to select one arbitrator, * * * and the said A. B. Groce * * * the other, and these two, a third; and if these two can not agree on a third, then such third arbitrator is to be selected, by the clerk of Court, and if he will not, then the probate judge, and if he will not select, then the third arbitrator shall be selected by the sheriff, and if, for any reason, the arbitrators can not be chosen, or a majority of them can not agree, then the amount of such damage, is to be determined by action at law. The award of said arbitrators shall be final and conclusive." * * *

After setting forth the terms of the contract, the defendant alleged, "that the plaintiff has no right to make or have fixed any claim to damages, save and except as is provided, by the terms of the contract aforesaid."

The plaintiff, in reply, alleged failure of consideration, fraud, and that he revoked the agreement to arbitrate, before the commencement of the action.

The notice served on the defendant, by the plaintiff, dated July 18, 1907, uses this language:

"You will, also, take notice, that even if said paper (the contract) be declared valid, the undersigned, W. H. Jones, does hereby revoke, any and all agreement or agreements to arbitrate, mentioned in said paper."

The question raised by the exceptions is thus stated, in the argument of the appellant's attorneys:

"There is only one question made, as we understand it, by the several exceptions of the plaintiff, which is succinctly embraced in the plaintiff's first request to charge, which was refused by his Honor, and which was as follows:

" 'The notice of revocation served on July 19, 1910, revoked the agreement to arbitrate, and it was no longer in force. The jury, therefore, having nothing to do with anything about the arbitration.'

"His Honor refused this, and charged, in effect, that the plaintiff was bound by the provisions of the paper referred to, unless it was obtained by fraud, and quoted at length from the case of *Hamilton* v. *Insurance Co.*, 136 U. S. 254, telling the jury that the principles announced in that case, were applicable to this case, provided the paper was not fraudulent. The Court further charged: 'If you find that this paper was not obtained by fraud, then the plaintiff has no cause of action, because before he can bring his suit, he must have his damage ascertained by arbitration. If you find that this paper was not obtained by fraud, you will find for the defendant; if you find that this paper was obtained by fraud, as I have endeavored to explain the law to you on that subject, then you will find for the plaintiff, such a sum as represents his injury, if any has been proven.' ".

"Where the parties to a contract, enter into an absolute agreement, or covenant, that in case a dispute should arise under such contract, all matters in difference between them relating thereto, shall be submitted to arbitration, it is void on grounds of public policy, because, to give effect to it, would be to oust the Courts of their jurisdiction." 2 Encyc. of Law, 571.

The appellant's attorneys do not dispute this principle, but contend for the doctrine, which is thus stated in 3 Cyc. 595: "Though the parties cannot, by any agreement to submit, oust the jurisdiction of the Courts, they may agree to

impose, as a condition precedent to any right of action, that, with respect of the liability to pay, the mode of settling the amount to be paid, or the time for paying the same, an arbitration shall first be held."

In the first place, the provision in said contract, for submitting the amount of damages to arbitration, is not a condition precedent, and his Honor erred in applying to this case, the principle announced in *Hamilton* v. *Insurance Co.,* 136 U. S. 254. In the said case, (upon which his Honor principally relied), the facts were very materially different, from those in the present case. The policy therein provided, that any difference arising between the insured and insurer, as to the amount of loss or damage thereunder, should be submitted, at the request of either party, to certain persons as abritrators, to be chosen in the manner therein provided, whose award should be conclusive, as to the amount of loss or damage only, and should not determine the question, as to the liability of the company, and that until such an appraisal, should have been permitted, and such an award obtained, *the loss would not be payable and no action would lie against the company.*

"In order to make such award (under arbitration provided for in policy) a condition precedent, to the right of maintaining suit, it must be so expressed in the policy, or necessarily implied from its terms. A mere provision in the policy, that the amount to be paid, in case of disagreement, shall be submitted to arbitration, does not prevent the insured, from maintaining an action, unless the policy further provides, that no action shall be maintained, until after award; but such agreement to submit to arbitration, is regarded as a collateral and independent agreement; the breach of which, while it will support a separate action, can not be pleaded in bar to an action, on the principal contract." *Mutual F. Ins. Co.* v. *Alvord,* 61 Fed. Rep. 752.

We do not deem it necessary, to cite other authorities to show, that the provisions of the contract herein, do not

constitute a condition precedent. But even if there was a condition precedent, it would not bar the plaintiff's right to bring his action, until there was a compliance with the requirements thereof.

In an exhaustive note to the case of *Chadwick* v. *Phoenix etc. Association,* 8 A. & E. Ann. Cases, (Mich.) 170, it appears that the authorities are in irreconcilable conflict.

There are cogent reasons why the doctrine for which the respondent contends, should not prevail. It would enable parties, practically, to abrogate the principle that they cannot oust the Court of jurisdiction, in the manner hereinbefore mentioned. For, they could accomplish this purpose, by simply designating specifically, every question that could arise under the contract. The authorities sustaining this view, do not place any limitation upon the power of the contracting parties, to specify what issues shall be referred, and may thus leave the Court powerless, to do more than pass a formal order, affirming the award of the arbitrators.

In the note to the case of *Chadwick* v. *Phoenix etc. Assn.,* 8 A. & E. Ann. Cases 170, the annotator cites numerous authorities to sustain the proposition, that a denial of all liability by the insurer, leaves nothing for arbitration, and that the insured may maintain an action on his policy, before arbitration.

We come now to the main question in the case, to wit: whether the provision in the agreement for arbitration, was revocable.

An agreement to arbitrate, does not stand upon a higher plane, than an actual submission to arbitration, which, as will be seen from the authorities, may be revoked by either party at any time, before the award is made.

"Though there are cases which hold that a submission under a contract or agreement, founded upon a valuable consideration, or a submission which is part of an agreement containing other terms to be performed by the parties, is irrevocable, by one party without the consent of the other,

the general rule is, that a submission may be revoked by either party thereto, before award, if the submission is not made a rule of Court, or is not otherwise regulated by statute. The remedy of the adverse party in case of a revocation, is by an action on the agreement to submit, or on the submission bond. But where an award is made and published, neither party can revoke the submission, without the consent of the other." 3 Cyc. 610-1. "A distinction has been drawn in some cases, the Courts holding that an arbitration clause in a contract is merely collateral to the agreement to pay, and is, therefore, no bar to an action upon the contract." 2 Encyc. of Law 582.

"At the common law, a submission might be revoked by any of the parties thereto, at any time before the award was made, nor was this right taken away by an express stipulation in the submission, that it should be irrevocable. And where one of several persons, who jointly made but one party, revokes the submission, even against the will of the others, it makes the submission void as to all."—*Id.* 594-5-6.

"Outside of the liability for breach of the agreement to submit, the effect of revoking the submission, is to restore the parties to their original rights against each other, as they existed before the submission was made." *Id.* 603-4.

"The authority of an arbitrator is at common law, in its nature revocable, and no act of the party submitting can render it irrevocable; but if the party is bound under a penalty to abide the arbitration, the bond is forfeited by his countermanding the authority. Vynier's Case, 3 Eng. Ruling Cases 357.

"It is an ancient and well established rule, that either party may revoke his submission, at any time before the award is made; and by this revocation, render the submission wholly ineffectual, and, of course, take from the arbitrators, all power of making a binding award. * * *

"As an agreement to submit is a valid contract, the promise of each party being the consideration for the other, a

revocation of the agreement or of the submission, is a breach of the contract, and the other party has his damages. The measure of damages would generally include all the expenses the plaintiff has incurred about the submission, and all that he has lost by the revocation in any way. * * * It may be implied as well as express; and would be implied by any act, which made it impossible for the arbitrators to proceed." 2 Par. on Com. * pages 710-711.

These authorities show that his Honor, the presiding Judge, erred, in his ruling upon the question of revocation.

Thus far, we have discussed this question, without reference to the constitutional and statutory provisions in our State. Section 1, article VI of the Constitution is as follows: "The General Assembly shall pass laws, allowing differences to be decided by arbitrators, to be appointed by the parties, who may choose that mode of adjustment."

Section 2849 of the Code of Laws, provides, that "it shall be lawful for any and all persons, in cases of disagreement or differences of opinion, as to the proper settlement of any contention that may hereafter arise and either party to the contention may, propose to leave their differences to arbitrators, each party to enter into bond, in double the amount involved, to faithfully abide the result of arbitration. The arbitrators shall be selected in the following manner. * * * The finding of said board of arbitration shall be final." * * *

In construing this statute, the Court used this language in the case of *Bishop* v. *Manufacturing Co.,* 78 S. C. 312, 58 S. E. 939:

"The agreement for arbitration is complete, when one party to a dispute proposes arbitration, and the other assents to it, and each party enters into bond, in double the amount involved, to faithfully abide the result. The selection of arbitrators, is no part of the agreement required by the statute. After the agreement has been made, the statute provides a method of selection, so that there may be no reason

for difference between the parties, on the point. But this is
nothing more than conferring on each party, the right to
demand that the arbitrators be selected, in the manner indi-
cated in the statute. This right, like all others, may be
waived by agreement of the parties, to select the arbitrators
in some other way. Hence it is illogical to say, an arbitra-
tion cannot be referred to the statute, merely because the
parties agree on the arbitrators, instead of exercising the
right to require them to be selected, in the manner indicated
in the statute."

The words of the statute and the language of the Court
indicate, that the remedy of either party, for a failure of the
other, to abide by the terms of the contract, is by an action
on the bond; thus showing that an agreement to arbitrate, is
collateral in its nature, and that damages for a breach
thereof, are recoverable in an independent action.

The question now under consideration, was determined in
the case of *Percival* ads. *Herbemont,* 1 McM. 59. (Cited
with approval in *Smith* v. *Thomson,* 1 Strob. 344.) For
the purpose of an amicable settlement of the controversy in
that case, a written agreement was entered into, by which it
was agreed, that certain negroes should be delivered, to Dr.
Percival—he agreeing to pay hire for such of them, as coun-
sel of the parties should decide, the plaintiff was entitled to;
and, on default of such decision, the plaintiff was to file a
bill in equity, which was to include all the matters in contro-
versy between them. In that case, the Court said: "The first
thing in this case is, to ascertain the character and decide on
the effect of the special plea in bar, filed by the defendant.
The plea sets out a special agreement, by which it appears
that the plaintiff had delivered up to the defendant, certain
slaves which came into his possession at the death of his
intestate, and had retained for a specific purpose, two others;
and that defendant was to pay such a sum, for the hire of
those he took, as should be determined on, by the counsel of
the parties, or by the court of equity; and the plea alleged,

that no sum had been agreed on by the counsel, nor had the plaintiff filed his bill in the court of equity. But it does not aver, that the defendant had applied to counsel, to have the matter adjusted himself. * * * It seems to have been the object of the parties, to submit the matters in controversy to arbitration; and this is the true character of their agreement. An agreement to arbitrate, or a bond to submit to arbitration, may be the subject of a suit, where the damages stipulated, or the penalty will authorize a recovery. But such an agreement, or bond, would not deprive either party of his remedy in the Courts, or oust them of their jurisdiction, in regard to the matter in dispute."

This language was used with reference to a *special* issue just such as is now under consideration. Mr. Justice Woods, practically concedes that the question now under consideration, was decided in that case; for he says: "It is true that the case of *Percival* ads. *Herbemont,* 1 McM. 59, decided in 1840, does lay down in very broad language, the general rule that a suit may be brought, in disregard of *any* sort of agreement to arbitrate," etc. He, however, contends, that the case just mentioned is no longer authority in this State, against the rule for which he contends as to the validity of arbitration agreements, for the reason that the cases of *Maxwell* v. *Thompson,* 15 S. C. 612, and *Brooks* v. *Laurens Milling Co.,* 78 S. C. 200, 58 S. E. 806; 84 S. C. 299, 66 S. E. 294, held that agreements to arbitrate are not against public policy. Conceding that agreements to arbitrate, are not against public policy, it by no means follows, that such an agreement *can have the effect of ousting the Court of its jurisdiction.* It seems to us, that the failure of Mr. Justice Woods to observe this distinction, has caused him to reach an erroneous conclusion.

Let us, however, see if the cases upon which he relies, sustain the proposition, that the case of *Percival* ads. *Herbemont,* 1 McM. 59, has been overruled. The case of *Maxwell* v. *Thompson,* 15 S. C. 612, was regarded as so unim-

portant, that it is published among the unreported cases, and all that it says in regard to this question, is as follows: "A building contract provided, that in case of any disagreement, the matter of difference should be referred to three disinterested persons as arbitrators; such agreement is not against public policy, but may be waived by the parties." No mention is made of the case of *Percival* ads. *Herbemont,* 1 McM. 59, nor is there any reference as to the power of parties to oust the Court of jurisdiction, by agreements to arbitrate special issues.

The case of *Brooke* v. *Laurens Milling Co.,* 78 S. C. 200, 58 S. E. 806; 84 S. C. 299, 66 S. E. 294, has no application whatever to the question under consideration, as there was an award in that case; and, the right of the parties to oust the Court of jurisdiction was not involved. There is no doubt, that the agreement in the present case, was to *arbitrate,* which, of course, meant that the parties should have all the rights incident to arbitration, one of which is the right of revocation.

It will thus be seen, that the Court cannot be ousted of its jurisdiction, until the right of revocation is destroyed, for which we fail to find any authority in this State. Mr. Justice Woods quotes the following language from the case of *Parsons* v. *Ambos,* (Ga.) 48 S. E. R. 696: "This fixing of value is a mere incident, and not of the substance of the contract. It rather serves the office of evidence." In the first place, this decision is against the rule stated in *Percival* ads. *Herbemont,* which shows that it is not a rule of evidence, but an agreement to *arbitrate,* with all the incidents of arbitration. And, in the second place, we do not understand how, as a mere rule of evidence, such an agreement could have the effect of ousting the Court of jurisdiction.

But whatever might have been done under the Constitution of 1868 towards ousting the Court of its jurisdiction, no agreement of any kind whatsoever, can have such effect

since the adoption of the Constitution of 1895, section 15,
article V, of which provides, that "the Courts of Common
Pleas shall have jurisdiction in all civil cases." This pro-
vision was inserted, for the prevention of just such ques-
tions, as have arisen in this case. This section was con-
strued in the case of *Epperson* v. *Jackson,* 83 S. C. 157, 65
S. E. 217, in which the Court said: "Section 15, article V of
the Constitution provides that the Court of Common Pleas
shall have jurisdiction in all cases, thus showing that its
jurisdiction, with that of the probate court in matters such
as are now under consideration, is concurrent. The words:
'They shall have jurisdiction in all civil cases' in section 15,
article V of the Constitution of 1895, are not to be found in
section 15 article IV of the Constitution of 1868, which
was construed in *Ex parte White,* 33 S. C. 442, 12 S. E. 5."
In the last mentioned case, it was held that the jurisdiction
of the probate court, as to the matter then before it, was
exclusive.

The Court of Common Pleas is the tribunal constituted
by law, for the trial of civil cases. A board of arbitrators
is, also, a tribunal for the trial of such issues, as may be sub-
mitted to it. Such board may be created by law, or by
agreement of the parties. The final determination of the
rights of the parties by the Court, is denominated a judg-
ment, while that of a board of arbitrators, is defined as an
award. But whether there is a judgment rendered by the
Court or an award made by a board of arbitrators, it is
conclusive of the question thus decided. If there is an
award by arbitrators, it is so far *res adjudicata* in its nature,
as to the question submitted, that it can not again be made
an issue in the Court of Common Pleas, unless there was
fraud or undue influence. But until there is an award,
section 15, article V of the Constitution shows, that the
parties cannot by agreement oust the Court of its jurisdic-
tion.

I can not conceive, how the framers of the Constitution, could have expressed in stronger language, their intention that the Court of Common Pleas, should not be deprived of its jurisdiction, by agreement or otherwise.

For these reasons I dissent.