[No. 2002-1. Division One—Panel 2. July 16, 1973.]

MARVIN PINKIS *et al., Respondents,* v. NETWORK CINEMA CORPORATION, *Petitioner.*

*Cartano, Botzer & Chapman, William H. Botzer,* and *Thomas C. McKinnon,* for petitioner.

*Culp, Dwyer, Guterson & Grader* and *John S. Ebel,* for respondents.

CALLOW, J.—Marvin Pinkis and S. E. McCoy are resi-

dents of the state of Washington; and Mandella Enterprises, Inc., is a Washington corporation. These Washington residents entered into an exhibitor franchise agreement with Network Cinema Corporation, a Delaware corporation, relating to the establishment and operation of a theater to be known as a "Jerry Lewis Cinema" to be located at Federal Way, King County, Washington. Network Cinema Corporation is engaged in the business of selling and servicing franchises for "Jerry Lewis Cinemas" throughout the United States. The agreement was negotiated and was to be performed in Washington. It was executed on March 15, 1970.

The plaintiffs commenced litigation with an initial complaint signed and filed on April 7, 1972. Thereafter, the plaintiffs filed an amended complaint composed of four claims. The first claim sets forth 38 separate alleged misrepresentations each of which related to the establishment and operation of a theater under the franchise format. The pleading states that the plaintiffs relied upon these false representations, entered into the agreement, and paid fees thereunder to the defendant. The second claim in the complaint alleges mistake on the part of the plaintiffs which the defendant knew of but failed to correct. The third claim alleges that the defendant was mistaken in the representations made; and if the plaintiffs had known of the defendant's mistake, they would not have entered into the agreement. The fourth claim relates to failures in performance by the defendant. There is no mention whatsoever of the arbitration clause in the agreement in any context in the amended complaint. The plaintiffs pray for rescission of the agreement and return of the parties to their prior status. The plaintiffs further allege that the agreement was in violation of the Franchise Investment Protection Act, RCW 19.100.

The exhibitor franchise agreement contained a sentence which stated that it "shall be construed in accordance with and governed by the laws of the State of New York." In addition, it contained an arbitration clause which read:

14. ARBITRATION. Any controversy, dispute or question arising out of, in connection with, or in relation to this agreement or its interpretation, performance or nonperformance of any breach thereof shall be determined by arbitration conducted in New York City in accordance with the then existing rules of the American Arbitration Association, and judgment upon any award, which may include an award of damages, may be entered in the highest State or Federal court having jurisdiction. Nothing contained herein shall in any way deprive the COMPANY of its right to obtain injunctive or other equitable relief as previously set forth herein.

The defendant moved for an order dismissing the action or, in the alternative, staying the action pending arbitration. In resistance to this motion, the plaintiffs filed an affidavit of S. E. McCoy which said in part:

When we were given the Exhibitor Franchise Agreement for signature, Mr. Chuck Beaumont, West Coast salesman for Network, told us that we should not take the Agreement to a lawyer, because the company would not agree to change one word. Because we had been induced into believing we were being treated fairly, and because of this claimed necessity for prompt signing, we did not review the contract in detail and did not take it to an attorney for review; we signed the agreement without making any changes. None of the Network representatives called to our attention Paragraph 14 of the "Additional Terms" requiring arbitration of any disputes in New York City, and we were not aware that it was in the Agreement.

The action is before this court pursuant to a writ of certiorari to review the denial of this motion by the trial court.

The defendant claims that the trial court erred in not enforcing the arbitration clause by dismissing the action or staying the action pending arbitration; in failing to apply the federal arbitration act, 9 U.S.C. §§ 1-14; in failing to grant the motion under New York law if that governs; or enforcing the arbitration clause under Washington law and the Washington arbitration act, if that governs.

The first issue raised is whether the agreement is subject to the United States Arbitration Act of 1925, 9

U.S.C. §§ 1-14. Section 1 of that act defines "commerce" as meaning commerce among the several states. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967), involved, in part, a consulting agreement entered into between a Maryland corporation and New Jersey corporation, the consulting services to be performed by an officer of the New Jersey corporation for the Maryland corporation. In discussing whether "commerce" was involved under the definition that would bring the federal arbitration act into play, the opinion noted that the agreement was inextricably tied to the continuing operations of an interstate business. In a footnote, it was observed that the act reached "contracts relating to interstate commerce", and the court was concerned with an agreement relating to the operation of a business in another state.

In the case before us, we find that "commerce" is involved and that the federal act is applicable. The terms of the agreement called for the Delaware corporate defendant to provide the Washington exhibitor with, *inter alia*, advice, training, educational materials, promotional assistance, advertising, and, to book for exhibit by the exhibitor, all films to be shown by the exhibitor. The exhibitor was not to exhibit any films except those booked by the defendant unless written consent to do so was given. The agreement contemplated, on its face, commerce between the states and, therefore, was subject to the federal arbitration act. *Dickstein v. duPont*, 443 F.2d 783 (1st Cir. 1971); *Bartell Media Corp. v. Fawcett Printing Corp.*, 342 F. Supp. 196 (S.D.N.Y. 1972); *Joseph Muller Corp. Zurich v. Commonwealth Petrochemicals, Inc.*, 334 F. Supp. 1013 (S.D.N.Y. 1971).

We turn to a consideration of the decisions where a claimant has alleged he was fraudulently induced to enter into a contract, and the opponent has demanded arbitration of the dispute pursuant to the contract itself. It is to be remembered that a claim that entry into a contract was induced by fraud makes the contract voidable, not void.

*Jack Mann Chevrolet Co. v. Associates Inv. Co.,* 125 F.2d 778 (6th Cir. 1942). The decision as to whether its execution was, in fact, induced by fraud is a decision that the parties separately may agree to arbitrate if they so desire.

*Prima Paint Corp.* inquired whether the federal court or arbitration should resolve a claim of fraud in the inducement of a contract governed by the federal arbitration act. The agreement in issue included an arbitration clause which read in part

> "Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the rules then obtaining of the American Arbitration Association . . . ."

*Prima Paint Corp. v. Flood & Conklin Mfg. Co., supra* at 398.

■ The plaintiff, Prima Paint Corp., commenced an action to rescind an agreement on the basis that it had been fraudulently induced. The trial court granted the defendant's motion to stay the action pending arbitration holding that a charge of fraud in the inducement of a contract containing an arbitration clause in these terms was a question for the arbitrators and not the court. The trial court was upheld by the Court of Appeals for the Second Circuit, and the United States Supreme Court affirmed. The Court of Appeals decision in *Prima Paint Corp.* based upon *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402 (2d Cir. 1959), was interpreted as holding that a claim of fraud in the inducement of the contract generally—as opposed to the arbitration clause itself—was for the arbitrators and not for the courts; and this was a rule of "national substantive law" governing even in the face of a contrary state rule. The Court of Appeals opinion is interpreted as adopting as a matter of federal law, having supremacy over state law, the rule that unless the parties intend otherwise an arbitration clause is "separable" from the contract in which it is embedded. Where no claim is made that entry into the arbitration clause itself was fraudulently induced, a broad

arbitration clause will encompass arbitration of the claim that the entire contract was induced by fraud. The view that the issue of "separability" of the arbitration clause from the remainder of the contract is one of state law was rejected as was the view that a claim of fraud in the inducement is an issue to be decided by a court. Continuing, the *Prima Paint Corp.* decision observes at page 403 that section 4 of the federal arbitration act instructs .a federal court to order arbitration to proceed when it is satisfied that " 'the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue.' " (Footnote omitted.) Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it, but the statutory language does not permit the court to consider claims of fraud in the inducement of the contract generally.

This decision is necessary if the federal arbitration act is to have any efficacy at all. As the opinion in *Robert Lawrence Co.* observed, the passage of the act was an exercise by Congress of its power over commerce. The act was to be as widely effective as possible, and section 2 of the act made arbitration agreements "valid, irrevocable, and enforceable" as a matter of law "equally applicable in state or federal courts." The opinion stated at page 410:

> the parties are entitled to agree, should they desire to do so, that one of the questions for the arbitrators to decide in case the controversy thereafter arises, is whether or not one of the parties was induced by fraud to make the principal contract . . . Surely there is no public policy that would stand as a bar to an agreement of such obvious utility, as is demonstrated by the facts of this case. The issue of fraud seems inextricably enmeshed in the other factual issues of the case. . . . Once it is settled that arbitration agreements are "valid, irrevocable, and enforceable" we know of no principle of law that stands as an obstacle to a determination by the parties to the effect that arbitration should not be denied or postponed upon the mere cry of fraud in the inducement, as

this would permit the frustration of the very purposes sought to be achieved by the agreement to arbitrate, i.e. a speedy and relatively inexpensive trial before commercial specialists.

The *Prima Paint Corp.* decision is consistent with *Moseley v. Electronic & Missile Facilities, Inc.*, 374 U.S. 167, 10 L. Ed. 2d 818, 83 S. Ct. 1815 (1963), (so stating in a footnote) in that there the petitioner attacked not only the contracts but also the arbitration clauses contained therein as having been procured through fraud. The court said in *Moseley* at page 171:

> In considering the question of the sufficiency of the pleadings with reference to the allegation of fraud, we believe that, as alleged here, the issue goes to the arbitration clause itself, since it is contended that it was to be used to effect the fraudulent scheme. If this issue is determined favorably to the petitioner, there can be no arbitration under the subcontracts.

The *Moseley* case thus stands for the proposition that when the issue of fraudulent inducement to enter into an arbitration clause is raised, the court is then to settle whether the arbitration clause was valid or fraudulent and only after the appropriate forum has been determined can the resolution of the remaining disputes be presented to the tribunal that has been found to be the proper decision-making body.

The pleading of the plaintiff makes no reference to the arbitration clause but claims instead that the entire contract was induced by the fraud of the defendant. The only specific comment from the plaintiffs concerning the arbitration clause is contained in the affidavit submitted in resistance to the motion to stay the state civil court proceedings pursuant to 9 U.S.C. §§ 2, 3, 4 and RCW 7.04.030. The purport of that affidavit is that the plaintiffs were not aware of the arbitration clause in the agreement. This stance does not impress us as sufficient to raise a claim that the defendant fraudulently induced the plaintiffs to agree to arbitrate disputes. *See Hamilton Life Ins. Co. v. Republic Nat'l Life Ins. Co.*, 408 F.2d 606 (2d Cir. 1969); *Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra* at 411. The

plaintiffs were mature businessmen engaged in a substantial investment who lived under this agreement for a period of nearly 2 years. It does not befit them to claim by affidavit in resistance to the motion to stay proceedings that they did not read the agreement they signed and innocently were led astray.

The identical arbitration clause was before the court in *Cobb v. Network Cinema Corp.,* 339 F. Supp. 95 (N.D. Ga. 1972). The plaintiffs who had entered into contracts establishing "Jerry Lewis Cinemas" in Georgia sought to restrain and enjoin the New York arbitration proceedings. The defendant denied the claims, asserted its right to proceed with arbitration and sought to stay the suit pending the outcome of the arbitration. The contest presented the issue of the viability of the arbitration clause in the face of alleged violations of federal and state statutes. The court stated that it was against public policy in Georgia to arbitrate all questions which might arise in the execution of a contract while New York had no such policy, but rather a strong legislative policy in favor of arbitration. The court held that it was bound by *Prima Paint Corp.* and not bound to follow *Erie R.R. v. Tompkins,* 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817, 114 A.L.R. 1487 (1938), by applying the public policy of a state in conflict with federal policy. Finally, it was pointed out that the gravamen of the plaintiff's complaint (as here) was that the whole scheme was infected by fraud and such attacks on contracts containing broad arbitration clauses uniformly have been held appropriate for the arbitration process. The court cited *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967); *A. & E. Plastik Pak Co. v. Monsanto Co.,* 396 F.2d 710 (9th Cir. 1968); *Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra; Saucy Susan Prods., Inc. v. Allied Old English, Inc.,* 200 F. Supp. 724 (S.D.N.Y. 1961); *In re Necchi Sewing Mach. Sales Corp.,* 194 F. Supp. 602 (S.D.N.Y. 1960).

In any event, we need not decide whether New York law would require arbitration or permit court proceedings to

decide the issues raised in view of our decision that the federal act controls.[1]

Further, our discussion has set forth the primacy of the federal arbitration act, substantively and procedurally, over state law when interstate commerce is the subject matter of the contract in dispute. Our discussion holding the federal arbitration act to be controlling over the laws of New York and Washington is restricted to this limited area where a separable, broad arbitration clause is contained in a contract which involves interstate commerce.[2]

Agreements to arbitrate are separable from the contracts in which they are placed unless the parties have expressed a contrary intention. Therefore, when a broad arbitration clause is adopted evidencing an intent to arbitrate all disputes between the parties, issues relating to the negotiation and making of the contract, such as fraudulent inducement, are referable to arbitration, unless the arbitration clause itself was improperly transacted.

We conclude that then only the narrow issue of whether entry into the arbitration clause itself was induced by fraud remains as an issue for resolution in the federal or state courts. If the court addressing itself to that limited

---

[1]With respect to the impact of New York law, *Prima Paint Corp.* noted that whether a party seeking rescission of a contract on the basis of fraud in the inducement could obtain judicial resolution of that claim was not clear in New York. *See also Robert Lawrence Co. v. Devonshire Fabrics, Inc. supra* at 412. The Massachusetts court in *Maxwell Shapiro Woolen Co. v. Amerotron Corp.*, 339 Mass. 252, 158 N.E.2d 875 (1959), construed the leading New York case of *Wrap-Vertiser Corp. v. Plotnick*, 3 N.Y.2d 17, 143 N.E.2d 366, 163 N.Y.S.2d 639 (1957), as based upon the construction of a narrow arbitration clause there in issue and as finding that that clause was not broad enough to include the issue of fraud in the inducement as a subject for arbitration.

[2]*Greenlee v. AAACON Auto Transport, Inc.*, 6 Wn. App. 742, 496 P.2d 359 (1972), was not cited by either counsel. We mention the case in passing to put at rest any question that its holding might have been overlooked in our decision. Suffice it to say that the issues reflected there are distinct from those presented in this case, and the insufficiency of the pleadings and record required that cause to be remanded for further proceedings in the trial court. That is not the situation in this instance.

issue concludes that the claimant was fraudulently induced to agree to arbitration as the forum for the decision of that dispute, then arbitration as the means for determination is set aside and the courts are the proper forum. If the federal arbitration act is to be given the required effect, then the claim of fraud inducing entry into the arbitration clause itself must be raised by the plaintiff; and, if not, the aggrieved party submits his grievances (including a claim of fraud inducing entry into the entire contract) to the forum of arbitration rather than to the state or federal courts. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, *supra*; *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402 (2d Cir. 1959); *Aerojet-General Corp. v. Non-Ferrous Metal Refining, Ltd.*, 37 App. Div. 2d 531, 322 N.Y.S.2d 33 (1971); *In re Rederi*, 25 N.Y.2d 576, 255 N.E.2d 774, 307 N.Y.S.2d 660 (1970); *In re Exercycle Corp.*, 9 N.Y.2d 329, 174 N.E.2d 463 (1961). *See also* R. Leflar, *American Conflicts Law* § 152 (1968); *Chapman v. PUD 1*, 367 F.2d 163 (9th Cir. 1966); *Hsieh v. Civil Serv. Comm'n*, 79 Wn.2d 529, 488 P.2d 515 (1971).

As stated in *Aerojet-General Corp.* at pages 531-32:

The subject of the three contracts involves commerce as defined by the United States Arbitration Act (9 U.S. Code, tit. 9, § 1 *et seq.*). The parties agree that the Federal act applies. Consequently, State rules allocating functions between court and arbitration do not control and in actions involving arbitration provisions in interstate transactions the Federal act overrides inconsistent provisions of arbitration acts of the several States, regardless of the forum in which they are brought. . . . We hold that, applying the Federal act and under the broad arbitration clause here involved, the issue of fraudulent inducement is for the arbitrators. Only if the claim is fraud in the inducement of the arbitration clause itself —an issue which goes to the "making" of the agreement to arbitrate—may the court resolve it. (See *Prima Paint v. Flood & Conklin, supra.*)

(Citations omitted.)

The civil action commenced in the courts of this state is

stayed and arbitration of the issues raised in the amended complaint of the plaintiff may proceed.

HOROWITZ and WILLIAMS, JJ., concur.