## 20559

EPISCOPAL HOUSING CORPORATION, Appellant, v. FEDERAL
INSURANCE COMPANY, McCrory-Sumwalt Construction Com-
pany, Inc., and Lafaye Associates, Inc., of whom McCrory-Sumwalt
Construction Company, Inc., and Lafaye Associates, Inc. are,
Respondents. (239 S. E. (2d) 647)

*Bowers and Barnhill,* of Columbia and *Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,*

*Graydon, Suber & Adams,* of Columbia, *for Respondent, McCrory-Sumwalt Construction Company, Inc.,*

*Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Respondent, Lafaye Associates, Inc.,*

December 6, 1977.

*Per Curiam:*

Careful consideration of the record and the briefs in this submitted case convinces us that the lower court properly disposes of all issues addressed by it except for the modification contained in an Addendum at the foot of the decree of the lower court. Accordingly, the decree of Judge Bristow, here appealed from, together with the Addendum as published herewith, are adopted as the opinion of this Court.

## ORDER OF JUDGE BRISTOW

This matter is before the Court upon the plaintiff's petition and Rule to Show Cause why the defendants Lafaye Associates, Inc. (Lafaye) and McCrory-Sumwalt Construction Co. (McCrory) should not be enjoined from continuing in pursuit of the arbitration proceedings that Lafaye and McCrory have instituted. This matter is also before the court upon Lafaye's and McCrory's Petition and Rule to Show Cause why the plaintiff's suit in this Court should not be stayed pending the outcome of the arbitration proceedings. This Order will dispose of all the aforementioned petitions and rules to show cause.

The pertinent facts concerning the arbitrability of the issues in dispute between Lafaye and McCrory and the Episcopal Housing Corporation (EHC) [are] as follows:

1. On March 4, 1970, and on July 22, 1971, Lafaye and EHC entered into a contract for the construction of a housing project for the elderly, now known as the Finlay House. On July 22, 1971, McCrory and EHC also entered into a contract for the construction of the Finlay House.

2. Construction commenced on or about July 28, 1971, and the project was completed on or about January 23, 1973. Thereafter Lafaye and McCrory were advised that water was discovered leaking into the building and continual negotiations commenced between Lafaye, McCrory and

EHC until a Summons (Complaint Not Served) was filed on or about January 14, 1975.

3. Negotiations between all three parties in an effort to resolve all problems with the construction of the Finlay House continued until a Complaint was served on or about August 30, 1976, and have continued to date.

4. On January 20, 1977, McCrory demanded arbitration of EHC, and on February 22, 1977, EHC received from the American Arbitration Association a letter with the demand for arbitration attached. The arbitration proceedings were enjoined on March 1, 1977, pending a hearing into the arbitrability of the disputes between the parties.

5. On April 11, 1977, this Court enjoined further proceedings in this Court pending a hearing into the issue of the arbitrability of the disputes between the parties.

6. On March 3, 1977, Lafaye served its Demand for Arbitration pursuant to the contractual agreements between Lafaye and EHC. The arbitration proceedings were enjoined on March 10, 1977, pending a hearing in to the issue of the arbitrability of the disputes between the parties.

7. On March 10, 1977, Lafaye served its Answer and Counterclaim upon EHC, alleging as an affirmative defense that the disputes between Lafaye and EHC were specifically enforceable under the Federal Arbitration Act and that the appropriate Demand for Arbitration had already been served on EHC. On April 11, 1977, this Court enjoined further proceedings in this Court pending a hearing into the issue of the arbitrability of the disputes between the parties.

This matter came to be heard before the undersigned on April 11, 1977, and the following issues emerged as necessary to determine whether the disputes between the parties are properly arbitrable: (1) does the Federal Arbitration Act, 9 U. S. C. § 1 *et seq.,* supersede the common law of South Carolina, and, (2) does the Federal Arbitration Act apply to the facts of this case?

## I.

It is well established in South Carolina that general arbitration agreements which oust the South Carolina circuit court from jurisdiction are unenforceable as against public policy. See, *e. g., Childs v. Allstate Insurance Co.,* 237 S. C. 455, 117 S. E. (2d) 867 (1961); *Jones v. Enoree Power Co.,* 92 S. C. 263, 75 S. E. 452 (1912). It is equally true, however, that under the supremacy clause of the United States Constitution, Article VI, Clause 2, this Court must recognize that federal statutes enacted pursuant to the United States Constitution are the supreme law of the land. The Federal Arbitration Act was enacted pursuant to the commerce clause, thereby superseding the South Carolina common law. The Federal Arbitration Act has been accorded supremacy over the common law of numerous states by the federal courts. See, *e. g., Prima Paint Corporation v. Flood & Conklin Manufacturing Co.,* 360 F. (2d) 315 (2) Cir. (1966), aff'd, 388 U. S. 395, 87 S. Ct. 1801, 18 L. Ed. (2d) 1270 (1967); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F. (2d) 402 (2nd Cir. 1959), *cert. granted,* 362 U. S. 909, 80 S. Ct. 682, 4 L. Ed. (2d) 618, *cert. dismissed,* 364 U. S. 801, 81 S. Ct. 27, 5 L. Ed. (2d) 37 (1960); *Warren Brothers Company v. Community Building Corporation of Atlanta,* 386 F. Supp. (M. D. N. C., 1974); *Home Indemnity Company v. Multiplex Building Corp.,* Civil Action No. 74-296 (D. S. C., 1974); *Younker Brothers, Inc. v. Standard Construction Co., Inc.,* 241 F. Supp. 17 (S. D. Iowa, 1965).

Likewise, numerous states have held that the Federal Arbitration Act is enforceable in the state courts, regardless of their existing common law. *See Pathman Construction Co. v. Knox County Hospital Association,* 326 N. E. (2d) 844 (Ind. App. 1975); *Miller v. Puritan Fashions Corp.,* 516 S. W. (2d) 234 (Tex. Civ. App. 1974); *Pinkis v. Network Cinema Corp.,* 9 Wash. App. 337, 512 P. (2d) 751 (1973); *Aero-Jet General Corp. v. Non-Ferrous Metal*

*Refining, Ltd.,* 37 A. D. (2d) 531, 322 N. Y. S. (2d) 33 (1971). In light of the foregoing, the Federal Arbitration Act, if applicable, will supersede the common law of South Carolina.[1]

## II.

In determining whether or not the Federal Arbitration Act[2] applies to the contracts between Lafaye and EHC the following guidelines have been applied by the North Carolina federal district court:

First, there is a written provision for arbitration in the contract. [9 U. S .C. § 2]. Second, the contract evidences a transaction involving commerce. [9 U. S. C. §§ 1 and 2]. Third, the Court is satisfied that the issue involved in suit is referable to arbitration under the written agreement. [9 U. S. C. § 2] and Fourth, the applicant for the stay is not in default in proceeding with such arbitration. [9 U. S. C. § 3]. *Warren Brothers Co.,* supra at 664.

There is no question that a written provision for arbitration is included in both contracts between Lafaye and EHC and the contract between McCrory and EHC, and that the disputes between the parties are referable to arbitration under the written agreement. There is also no evidence

---

[1] The Court is aware of Section 7.1.1 of the American Institute of Architects Document A201 which provides that, "[T]he Contract shall be governed by the law of the place where the Project is located.". This provision, however, would certainly include all applicable federal law, including the Federal Arbitration Act.

[2] The applicable provisions of the Act are:
§ 1. MARITIME TRANSACTIONS AND COMMERCE DE-FINED: EXCEPTIONS TO OPERATION OF TITLE.
. . . 'Commerce' as herein defined means commerce among the several states or in the District of Columbia, or between any such territory and another, or between any such territory and any state or foreign nation, or between the District of Columbia and any state or territory or foreign nation . . .
§ 2. VALIDITY, IRREVOCABILITY AND ENFORCEMENT OF AGREEMENTS TO ARBITRATE.
"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract."

that Lafaye or McCrory are in default in proceeding with the arbitration; in fact, arbitration proceedings are pending and a demand for arbitration was served prior to the service of Lafaye's and McCrory's Answer with this Court. The sole remaining issue for application of the Federal Arbitration Act, therefore, is whether or not the "contracts evidence a transaction involving commerce." A review of the contract documents reveals that on their face they evidence a transaction involving commerce.

The agreement dated July 22, 1971, between Lafaye and EHC on FHA Form No. 2719-A, specifies the duties and responsibilities of both Lafaye and EHC and requires Lafaye to prepare all specifications and drawings to include detail drawings. The agreement between McCrory and EHC on FHA Form 2442A, dated July 22, 1971, states that the contract between the parties consists of all "Contract Documents" to include the drawings and specifications including the current edition of AIA Document A201, entitled "General Conditions of the Contract for Construction," Eleventh Edition, September 1967. American Institute of Architects Document A201 is also included in the Table of Contents of Lafaye's specifications. It is apparent that AIA Document A201 is a part of the contracts between Lafaye and EHC and McCrory and EHC.

Section 1.1.2 of AIA Document A201 defines the contract as consisting of all contract documents. The contract documents consist of:

[T]he Agreement, the Conditions of the Contract (General, Supplementary, and other Conditions), the Drawings, the Specifications, all addenda issued prior to execution of the Agreement, and all modifications thereto. Section 1.1.1.

Document A201 further defines all work under the contract and the intention of the parties with reference to the contract documents.

### 1.1.3 THE WORK

The term Work includes all labor necessary to produce the construction required by the contract Documents, and all materials and equipment incorporated or to be incorporated in such construction.

1.2.3 The Contract Documents are complementary, and what is required by any one shall be as binding as if required by all. The intention of the documents is to include all labor, materials, equipment and other items as provided in Subparagraph 4.41 necessary for the proper execution and completion of the work.

To determine whether or not the contracts, on their face, evidence commerce, it is, therefore, necessary to examine all "contract documents."

Initially, the specifications of Lafaye are replete with references to equipment and materials to be furnished from outside South Carolina. The following corporations and their locations are found at the designated pages of Lafaye's specifications:

1. Master Builders Co., Cleveland, Ohio—p. 3-9.

2. Finestone Corporation, Detroit, Michigan—p. 7-5.

3. Tnemec Co., Inc., North Kansas City, Missouri—p. 9-16.

4. L & M Surco, Atlanta, Georgia—p. 9-13.

5. Master Mechanics Co., Cleveland, Ohio—p. 9-16.

6. Desco Chemical Co., Inc., Buffalo, New York—p. 9-16.

7. Vitricon, Inc., Woodside, New York—p. 9-16.

8. Armstrong Cork Co., Lancaster, Pa.—p. 2-4

9. W. S. Tyler Co., Cleveland, Ohio—p. 14-10.

10. Globe Van Dorn, Milwaukee, Wis.—p. 19-10.

11. Otis Elevator Co., New York, N. Y.—p. 14-10.

12. Danlstrom Metallic Door Co., Jamestown, N. Y.—p. 14-13.

13. Noonan-Laing, Inc., York, Pa.—p. 3-1.

Moreover, the folowing pages of the specifications refer to manufacturers, products and trade names which are certainly sufficient to put EHC on notice that materials and equipment from outside South Carolina would be used in the construction of the Finlay House: pp. 3-1, 3-10, 3-13, 3-15, 3-16, 4-2, 5-7, 5-9, 7-2, 7-3, 7-4, 8-2, 8-5, 9-8, 9-10, 9-19, 10-1, 10-5, 10-6, 11-1, 11-2, 12-2, 12-4, 14-5, 15A-5, 15A-6, 15A-7, 15A-9, 15A-10, 15A-13, 15A-15, 15A-16, 15B-9, 15B-11, 15B-12, 15B-13, 15B-15, 15B-16, 15B-19, 15B-24, 15B-25, 16-5, 16-7, 16-9.

FMA Form 2328, dated July 22, 1971, is a part of the contract documents which lists the contractor's cost breakdown and names all subcontractors involved in the construction of the Finlay House. The following out-of-state subcontractors[3] are listed on this document: Acoustics, Inc.; Truzillo Construction; Miles Plastering Co.; Westinghouse Electric Corp.

In light of the foregoing, the contract documents "evidence transactions in commerce" on their face. As an additional ground for holding that the contracts between the parties evidence transactions in commerce, one need only consider the nature of the project and the actual work performed in fulfillment of the contractual obligations. It would be virtually impossible to construct an eighteen (18) story apartment building between 1971 and 1973 with materials, equipment and supplies all produced and manufactured solely within the State of South Carolina. The affidavit of J. D. McCall, Jr., President of Lafaye indicates that shop drawings from all over the country were utilized by the architects to prepare the specifications prior to July 22, 1971. The affidavit of Robert L. Sumwalt, Jr., Senior Vice President of McCrory, indicates that labor, supplies and materials from all over the country were utilized in the construction of the Finlay House.

---

[3] *See,* affidavit of Robert L. Sumwalt for the city and state in which these subcontractors are located.

Accordingly, the petitions of the plaintiff EHC to enjoin further proceedings in arbitration are denied, and the temporary stays against further proceedings in arbitration are dissolved. The petitions of both Lafaye and McCrory to proceed with arbitration are granted, . . . and all further proceedings in this court are stayed until arbitration is ended.

## ADDENDUM

Appellant (Episcopal Housing Corporation) further contends that arbitration may not be enforced under the Federal Arbitration Act since the defendant Federal Insurance Company (Federal) is not a party to a contract which contains a written arbitration provision. This contention is without merit. Under the Federal Arbitration Act, an agreement between two or more parties to submit their disputes to arbitration is not rendered unenforceable merely because there are additional parties to the disputes who are not bound by an arbitration agreement. *Hamilton Life Insurance Company of New York v. Republic National Life Insurance Company,* 408 F. (2d) 606 (2nd Cir. 1969) ; *Hilti, Inc. v. Oldach,* 392 F. (2d) 368 (1st Cir. 1968).

The fact that Federal is not a party to an arbitration agreement does not prevent an order staying the judicial proceedings pending arbitration between those who are parties to such an agreement. However, the Circuit Court included in its order the requirement that all parties be included in one arbitration proceeding. Federal has signed no arbitration agreement and can not be forced into compulsory arbitration. We feel it was erroneous to condition the relief to which respondents are plainly entitled upon the voluntary submission of Federal to arbitration proceedings. This provision has been deleted from the foregoing Order of the lower court.

It is so Ordered.

Affirmed as Modified.