747 S.E.2d 461

**CAPE ROMAIN CONTRACTORS, INC., Respondent,**

v.

**WANDO E., LLC, and Sean Barnes, a/k/a Sean A. Barnes, Appellants.**

Appellate Case No. 2011–197207.

No. 27298.

Supreme Court of South Carolina.

Heard April 16, 2013.

Decided Aug. 14, 2013.

116

118

E.J. Westbrook and Catherine H. McElveen of Richardson Patrick Westbrook & Brickman, LLC, of Mt. Pleasant, for Appellants.

Albert A. Lacour, III, of Clawson & Staubes, LLC, of Charleston, for Respondent.

Justice KITTREDGE.

This case arises from a construction dispute. The contract between the general contractor and subcontractor provided for arbitration pursuant to the Federal Arbitration Act. When a complaint was filed, Appellant Sean Barnes, the general contractor, and Appellant Wando E., the property owner, sought to enforce the construction contract's arbitration clause. The trial court refused to compel arbitration on the basis that the contract did not sufficiently impact interstate commerce. We find the trial court erred in finding the parties' transaction had an insufficient nexus to interstate commerce and reverse.

## I.

Appellant Wando E., LLC, owns property along the Wando River in Berkeley County, South Carolina. Wando E. retained Appellant Sean Barnes to serve as the general contractor for the construction of a marina. Barnes, in turn, hired Respondent Cape Romain as a subcontractor for the project. Barnes and Cape Romain entered into a standard form con-

tract (the Contract) promulgated by the American Institute of Architects.

Section 5.1 of the Contract requires an affirmative election among various methods of dispute resolution. Parties must select arbitration, litigation in court, or "other." Barnes and Cape Romain checked the box beside arbitration, selecting it as the binding method of dispute resolution for any subsequent claim. Specifically, article 21 of the Contract provides that all "[c]laims, disputes and other matters in question arising out of or relating to this Contract" shall be subject to arbitration. Further, section 19.2 of the Contract expressly provides that if arbitration is selected as the method of dispute resolution, the Federal Arbitration Act[1] (FAA) shall govern the arbitration process.

Several months into construction, the project engineer refused to certify further payments, raising concerns about certain angled pilings and misaligned dock sections.[2] Cape Romain insisted it had properly constructed the docks and contended that any defects were the result of improperly manufactured prefabricated dock sections. Cape Romain demanded payment of $158,413.14 and filed a mechanics' lien against the real property to secure that amount. Thereafter, Cape Romain filed suit against Barnes and Wando E., seeking foreclosure of its mechanics' lien against Wando E. and alleging a breach of contract claim against Barnes.[3]

Appellants moved to dismiss and compel arbitration, arguing that because all of the claims relate to Cape Romain's performance under the Contract, the claims should be arbitrated. Cape Romain opposed dismissal and arbitration, arguing Wando E. was not a party to the Contract and, thus, may not compel arbitration and that the arbitration clause is not enforceable under the FAA because the transaction did not impact interstate commerce.

---

1. 9 U.S.C. §§ 1–16 (2012).

2. Pursuant to article 15 of the Contract, Cape Romain was not entitled to be paid until the project engineer certified the work was completed properly.

3. Cape Romain also alleged a quantum meruit claim in the alternative against both defendants.

■ The trial court refused to dismiss the lawsuit or compel arbitration of any claim, finding performance of the Contract did not involve a sufficient impact on interstate commerce to "justify or trigger" application of the FAA. Further, the trial court found Wando E. could not enforce the arbitration agreement absent a showing of some special relationship to a contracting party. Appellants appealed, and the case was certified to this Court pursuant to Rule 204(b), SCACR.[4]

## II.

■ Appellants argue the trial court erred in finding the arbitration provisions of the Contract cannot be enforced because the parties' transaction did not involve interstate commerce. We agree.

■ We find arbitration pursuant to the FAA is proper because the underlying marina construction transaction falls within the purview of Congress's commerce power. "Generally, any arbitration agreement affecting interstate commerce . . . is subject to the FAA." *Landers v. Federal Deposit Ins. Co.*, 402 S.C. 100, 108, 739 S.E.2d 209, 213 (2013) (citing

---

4. We summarily reject Cape Romain's contention that this matter is not immediately appealable. An order denying arbitration is immediately appealable. *Towles v. United HealthCare Corp.*, 338 S.C. 29, 34–35, 524 S.E.2d 839, 842 (Ct.App.1999) (noting section 16 of the FAA explicitly provides for an appeal from an order denying a motion to compel arbitration and holding that " 'an order that favors litigation over arbitration—whether it refuses to stay the litigation in deference to arbitration; [or] *refuses to compel arbitration* . . . is immediately appealable, even if interlocutory.' " (quoting *Stedor Enters., Ltd. v. Armtex, Inc.*, 947 F.2d 727, 730 (4th Cir.1991))). Regardless of how the motion was styled or captioned, Appellants requested only that arbitration be compelled. Focusing, as we must, on substance rather than nomenclature, because Appellants sought only the precise relief afforded under the FAA, we find the trial court's refusal to compel arbitration is immediately appealable. *See Rota–McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 698 (4th Cir.2012) (citing *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 586 (4th Cir.2012)) (noting that "the proper inquiry focuses on substance rather than nomenclature" and instructing courts to "look to whether a motion evidences a clear intention to seek enforcement of an arbitration clause rather than [to] whether it adhered to a specific form or explicitly referenced §§ 3 or 4 [of the FAA]"); *see also* S.C.Code § 15–48–200(a)(1) (providing for an appeal from an order denying an application to compel arbitration).

*Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)). The United States Supreme Court "has previously described the [FAA]'s reach expansively as coinciding with that of the Commerce Clause." *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 274, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (citing *Perry v. Thomas,* 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). Thus, in determining whether the FAA applies to a particular arbitration agreement, a court considers whether the contract concerns a transaction involving interstate commerce. *Episcopal Housing Corp. v. Fed. Ins. Co.,* 269 S.C. 631, 637, 239 S.E.2d 647, 650 (1977).

 Under the reach of the Commerce Clause, "Congress has authority to regulate (1) 'the use of the *channels* of interstate commerce,' (2) 'the *instrumentalities* of interstate commerce, or persons or things in interstate commerce . . .' and (3) 'those activities having a *substantial relation* to interstate commerce.' " *United States v. Gould,* 568 F.3d 459, 470 (4th Cir.2009) (quoting *United States v. Morrison,* 529 U.S. 598, 609, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000)). "Channels of commerce are 'the interstate transportation routes through which persons and goods move.' " *United States v. Ballinger,* 395 F.3d 1218, 1225 (11th Cir.2005) (quoting *Morrison,* 529 U.S. at 613 n. 5, 120 S.Ct. 1740) (noting channels of interstate commerce include highways, railroads, navigable waterways, airspace, telecommunications networks and even national securities markets). "Instrumentalities of interstate commerce, by contrast, are the people and things themselves moving in commerce . . . ." *Id.* at 1226 (identifying automobiles, airplanes, boats, shipments of goods, pagers, telephones and mobile phones as instrumentalities of interstate commerce).

 Here, despite noting the following facts, the trial court concluded the parties' transaction did not involve interstate commerce: (1) that certain raw materials used in constructing the marina originated in Ohio; (2) that Cape Romain transported the raw materials on its equipment and barges through the navigable waterways of the Charleston Harbor and up the Wando River to the project site; and (3) that the marina was constructed in navigable waterways under a permit issued by the Army Corps of Engineers. In analyzing the

interstate commerce question solely as whether the Contract on its face reflected a "substantial relation to interstate commerce" and in finding the FAA was not triggered, the trial court relied upon *Timms v. Greene*[5] and *Mathews v. Fluor Corporation.*[6] This was error, for the proper analysis involves consideration of all three broad categories of activity within the purview of Congress's commerce power—use of the channels of interstate commerce; regulation of persons, things or instrumentalities in interstate commerce; and regulation of activities having a substantial relation to interstate commerce. *United States v. Lopez,* 514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). While the transaction's effect on interstate commerce was by no means insubstantial, the parties' transaction plainly falls within the purview of Congress's commerce power as it extensively involves both the channels and the instrumentalities of interstate commerce.

We initially observe that the materials used in constructing the dock were instrumentalities of interstate commerce, as they were manufactured or fabricated in Ohio and transported to South Carolina to be used in constructing the marina. In addition, Cape Romain consulted with an out-of-state engineering and survey company in connection with the installation of the dock sections. This Court has previously held that incorporating out-of-state materials and consulting with out-of-state professionals in connection with a construction project

---

5. 310 S.C. 469, 427 S.E.2d 642 (1993). We overrule *Timms* to the extent it determined the FAA did not apply because the contract *on its face* failed to demonstrate that the parties contemplated an interstate transaction. *See Muñoz v. Green Tree Fin. Corp.,* 343 S.C. 531, 538–39, 542 S.E.2d 360, 363–64 (2001) (holding that although parties may not have contemplated an interstate transaction at the time of contract formation, if their contractual relationship in fact involves interstate commerce, then the FAA nonetheless applies); *see also Allied–Bruce,* 513 U.S. at 277–78, 115 S.Ct. 834 (rejecting the argument that the FAA applies only where the parties contemplated an interstate transaction and finding the FAA applies where an agreement that contains an arbitration provision, on the whole, evidences a transaction that in fact affected interstate commerce); *Zabinski v. Bright Acres Assocs.,* 346 S.C. 580, 591, 553 S.E.2d 110, 115 (2001) ("The [United States] Supreme Court utilizes a 'commerce in fact' test to determine if the transaction involves interstate commerce for the FAA to apply.").

6. 312 S.C. 404, 440 S.E.2d 880 (1994), overruled by *Muñoz,* 343 S.C. at 539 n. 3, 542 S.E.2d at 363 n. 3.

are indicators of interstate commerce. *See Zabinski,* 346 S.C. at 594–95, 553 S.E.2d at 117–18 (utilization of out-of-state materials, contractors and investors implicates interstate commerce); *Episcopal Housing,* 269 S.C. at 640, 239 S.E.2d 647 S.E.3d at 652 (use of labor, supplies, and materials from out-of-state sources indicates interstate commerce); *Blanton v. Stathos,* 351 S.C. 534, 540, 570 S.E.2d 565, 568 (Ct.App.2002) (finding consultation with out-of-state technicians is an indicator of interstate commerce).

Regarding channels of interstate commerce, as noted, the construction site is located on the Wando River—i.e., within a channel of interstate commerce—as evidenced by the need for the Army Corps of Engineers to issue a federal permit before construction could begin.[7] Moreover, in performing its duties under the Contract, Cape Romain used barges to transport materials and equipment through various navigable waterways and as construction platforms adjacent to the marina site. Thus, the location of the construction site, the transportation of out-of-state materials through the channels of interstate commerce, and the use of barges and other instrumentalities of interstate commerce all support application of the FAA in this instance. *See United States v. Rands,* 389 U.S. 121, 122–23, 88 S.Ct. 265, 19 L.Ed.2d 329 (1967) ("The power to regulate commerce comprehends the control for that purpose, and to the extent necessary, of all the navigable waters of the United States."); *Ballinger,* 395 F.3d at 1226 (noting that shipments of goods and boats themselves are instrumentalities of interstate commerce); *United States v. Deaton,* 332 F.3d 698, 706 (4th Cir.2003) ("The power over navigable waters is an aspect of the authority to regulate the channels of interstate commerce.").

Even if we were to view this case only through the third category of the federal commerce power—regulation of activities having a substantial relation to interstate commerce—the record demonstrates that the activities implicated in this marine construction project bear on interstate commerce in a

---

7. The permit references federal regulations regarding the Department of the Army's regulatory authority over navigable waters and states the purpose of the project is to construct a marina to provide docking space for boats (instrumentalities of interstate commerce) and access to navigable waters (channels of interstate commerce).

way sufficiently substantial to invoke the FAA. *See Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56–57, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (quoting *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.,* 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948)) ("Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.' Only that general practice need bear on interstate commerce in a substantial way."). Particularly when the commercial aspects of this transaction are considered in the aggregate pursuant to *Citizens Bank v. Alafabco,* it is clear the trial court erred in finding the FAA did not apply.

Because the transaction did involve interstate commerce, we turn to the question of whether arbitration should be compelled under the Contract.

▮▮▮▮▮▮ "Arbitration is contractual by nature. . . ." *Thomson–CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.1995); *see also Towles,* 338 S.C. at 37, 524 S.E.2d at 843–44 ("Arbitration is available only when the parties involved contractually agree to arbitrate."). " 'There is a strong presumption in favor of the validity of arbitration agreements because of the strong policy favoring arbitration.' " *Bradley v. Brentwood Homes, Inc.,* 398 S.C. 447, 455, 730 S.E.2d 312, 316 (2012) (quoting *Towles,* 338 S.C. at 37, 524 S.E.2d at 844). " 'This policy [favoring arbitration], as contained within the Act, 'requires courts to enforce the bargain of the parties to arbitrate.' " *KPMG, LLP v. Cocchi,* —— U.S. ——, 132 S.Ct. 23, 25, 181 L.Ed.2d 323 (2011) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)); *see also Zabinski,* 346 S.C. at 592, 553 S.E.2d at 116 (" 'The FAA simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.' " (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989))). "[C]ourts must 'rigorously enforce' arbitration agreements according to their terms, including terms that 'specify *with whom* the parties choose to arbitrate their disputes,' and 'the rules under which that arbitration will be conducted.' " *Am. Exp. Co. v. Italian Colors*

*Rest.,* —— U.S. ——, ——, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013) (internal citations omitted). Thus, the FAA "does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed in the manner provided for in the parties' agreement.'" *Volt Info. Scis.,* 489 U.S. at 474–75, 109 S.Ct. 1248 (quoting 9 U.S.C. § 4).

Section 19.2 of the Contract expressly invokes the FAA and such contractual provisions should be enforced in accordance with their unambiguous terms. *See Dean Witter,* 470 U.S. at 221, 105 S.Ct. 1238 (noting that the "preeminent concern" in construing arbitration agreements is to protect the contractual rights of the parties, which requires courts to enforce "rigorously" those terms upon which private parties have agreed); *Muñoz,* 343 S.C. at 538, 542 S.E.2d at 363–64 (holding an agreement that provides it shall be governed by the FAA is enforceable in accordance with its terms). We hold it was error to refuse to compel arbitration.

■ Initially, we note Cape Romain has never challenged the arbitrability of the mechanics' lien claim—only the applicability of the FAA. Moreover, the issues involved in Cape Romain's mechanics' lien claim against Wando E. are completely dependent on the breach of contract dispute between Cape Romain and Barnes. *See Sea Pines Co. v. Kiawah Island Co.,* 268 S.C. 153, 159, 232 S.E.2d 501, 503 (1977) (observing that where no debt is owed under a construction contract, no mechanics' lien is proper); *Glidden Coatings & Resins v. Suitt Const. Co.,* 290 S.C. 240, 244, 349 S.E.2d 89, 91 (Ct.App.1986) (finding the predicate for recovery under a mechanics' lien suit is the existence of an unpaid debt); *Blackwell v. Blackwell,* 289 S.C. 470, 472–73, 346 S.E.2d 731, 732–33 (Ct.App.1986) (noting that a lien is valid only to the extent the underlying obligation it secures is valid); *Shelley Const. Co., Inc. v. Sea Garden Homes, Inc.,* 287 S.C. 24, 26, 336 S.E.2d 488, 489 (Ct.App.1985) (a mechanics' lien is given to secure payment of the debt due for labor performed or materials furnished during construction). Thus, we are able to determine "with positive assurance" that the mechanics' lien claim arises directly from the Contract and, therefore, is encompassed by the arbitration agreement. *See Zabinski,* 346 S.C. at 597, 553 S.E.2d at 118 ("[U]nless the court can say

with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute, arbitration should be ordered."); *Towles*, 338 S.C. at 41, 524 S.E.2d at 846 ("Therefore, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."). Accordingly, we hold the mechanics' lien claim must be arbitrated.[8]

As a final matter, the trial court found Wando E. could not compel arbitration because it was not a party or signatory to the Contract between Cape Romain and Barnes. While Wando E., as a non-contracting party, may lack standing to compel arbitration, Barnes certainly has standing to do so. Appellants are correct that, in any event, Wando E. could join arbitration, once compelled pursuant to Barnes' motion.

The Contract provides:

§ 21.6 Any party to an arbitration may include by joinder persons or entities *substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration* provided that the party sought to be joined consents in writing to such joinder. . . . .

§ 21.7 The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be

---

8. Our finding is not precluded by section 21.2 of the Contract, which addresses mechanics' lien claims and allows a party to "proceed in accordance with applicable law to comply with the lien notice or filing deadlines." *See* S.C.Code § 29–5–90 (lien must be filed within 90 days of ceasing to furnish labor or materials); S.C.Code § 29–5–120 (suit to enforce the lien must be commenced within six months after ceasing to furnish labor or materials or the lien is dissolved). Reading section 21.2 in conjunction with the Contract as a whole (particularly the balance of article 21), we find section 21.2 does not alter the agreement to arbitrate all "[c]laims disputes and other matters in question arising out of or relating to this Contract"; rather, section 21.2 merely creates a narrow exception permitting a party to preserve a mechanics' lien through timely filings. Indeed, nothing in the Contract excludes the mechanics' lien claim from the scope of the arbitration clause. To find otherwise would be to construe the Contract to defeat its very purpose: the resolution of all related disputes in one, agreed-upon forum— arbitration. *See Zabinski*, 346 S.C. at 597, 553 S.E.2d at 118 ("[T]he range of issues that can be arbitrated is restricted by the terms of the agreement.").

specifically enforceable under applicable law in any court having jurisdiction thereof.

(emphasis added).

Applying state-law principles of contract interpretation, we find as a matter of law that Wando E. is an entity who is "substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration." Therefore, under the unambiguous terms of the Contract between Barnes and Cape Romain, Wando E. may properly be joined as a party to the arbitration proceedings. *See Auto–Owners Ins. Co. v. Carl Brazell Builders, Inc.*, 356 S.C. 156, 162, 588 S.E.2d 112, 115 (2003) ("When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used."); *B.L.G. Enters. v. First Fin. Ins. Co.*, 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999) (noting "[t]he court's duty is 'limited to the interpretation of the contract made by the parties themselves'" (quoting *C.A.N. Enters. v. S.C. Health & Human Servs. Fin. Comm'n*, 296 S.C. 373, 378, 373 S.E.2d 584, 587 (1988))).

## III.

We therefore conclude the trial court erred in denying the motion to compel arbitration. Because arbitration will proceed, the trial court proceedings shall be stayed pending the outcome of arbitration. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir.2002) ("This stay-of-litigation provision is mandatory. A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview.").

**REVERSED AND REMANDED.**

TOAL, C.J., BEATTY, HEARN, JJ., and Acting Justice JAMES E. MOORE, concur.