# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Palmetto Construction Group, LLC, Respondent,

v.

Restoration Specialists, LLC, Reuben Mark Ward, and Lynnette Pennington Ward, Petitioners.

Appellate Case No. 2019-002052

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
Mikell R. Scarborough, Master-in-Equity

---

Opinion No. 28010
Heard January 12, 2021 – Filed March 10, 2021

---

## AFFIRMED AS MODIFIED

---

A. Bright Ariail, Law Office of A. Bright Ariail, LLC, of Charleston for Petitioners.

Jaan Gunnar Rannik and Andrew K. Epting Jr., Epting & Rannik, LLC, both of Charleston for Respondent.

---

**JUSTICE FEW:** This is a civil action to collect a debt under a contract that contains an arbitration provision. The defendants appealed the master in equity's

order refusing to set aside the entry of their default. The court of appeals dismissed the appeal on the basis that an order refusing to set aside an entry of default is not immediately appealable. *Palmetto Constr. Grp., LLC v. Restoration Specialists, LLC*, 428 S.C. 261, 266, 834 S.E.2d 204, 206 (Ct. App. 2019). The defendants filed a petition for a writ of certiorari claiming the order is immediately appealable because it had the effect of precluding their motion to compel arbitration, and in fact, the order states, "Defendants' motion to stay and compel arbitration is denied as [the defendants are] in default." *See Cape Romain Contractors, Inc. v. Wando E., LLC*, 405 S.C. 115, 121 n.4, 747 S.E.2d 461, 464 n.4 (2013) ("An order denying arbitration is immediately appealable." (citing *Towles v. United HealthCare Corp.*, 338 S.C. 29, 34-35, 524 S.E.2d 839, 842-43 (Ct. App. 1999))); *see also* S.C. Code Ann. § 15-48-200(a)(1) (2005). We affirm the court of appeals.

Palmetto Construction Group brought this action against Restoration Specialists, its managing member Mark Ward, and his wife Lynnette Ward for payment under a construction contract with an arbitration provision. The defendants did not answer the complaint. The circuit court found all three defendants were in default under Rule 55(a), SCRCP, and referred the case to the master in equity pursuant to Rule 53(b), SCRCP. The defendants filed a motion to set aside the entry of default. The master denied the motion, and the defendants appealed. The court of appeals held the master's order was not immediately appealable and dismissed the appeal. *Palmetto Constr. Grp.*, 428 S.C. at 266, 834 S.E.2d at 206. The court of appeals found the fact the order refusing to set aside the entry of default effectively precluded the defendants' effort to compel arbitration did not affect the immediate appealability of the order. 428 S.C. at 266-67, 834 S.E.2d at 207.

A party in default has three primary options: (1) do nothing pending the entry of judgment by default under Rule 55(b), SCRCP; (2) file an appearance under Rule 55(b)(2), SCRCP, in an attempt to protect its interests before the entry of judgment by default; or (3) request the entry of default be set aside pursuant to Rule 55(c), SCRCP. Under either option, the party has no right of appeal until after final judgment. *See Thynes v. Lloyd*, 294 S.C. 152, 153, 363 S.E.2d 122, 122 (Ct. App. 1987) (stating an "order refusing to grant relief from the entry of default is not appealable until after final judgment"); *but see Johnson ex rel. Jefferson v. Gene's Used Cars, Inc.*, 295 S.C. 317, 317, 368 S.E.2d 456, 456 (1988) (stating "while the Court of Appeals reached the correct result in [*Thynes*], it improperly relied on Rule 72, SCRCP, and federal cases interpreting the appealability of orders made pursuant

to Rule 55(c) . . . . We agree that the . . . denial of a Rule 55(c) motion is not directly appealable under S.C. Code Ann. § 14-3-330 (1976).").

The defendants contend the law of arbitration changes the immediate appealability of the master's order. To support their contention, they rely on language from the Supreme Court and this Court stating the law "favors" arbitration. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765, 785 (1983) ("Section 2 [of the Federal Arbitration Act] is a congressional declaration of a liberal federal policy favoring arbitration agreements . . . ."); *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001) ("The policy of the United States and South Carolina is to favor arbitration of disputes."). However, there is nothing in the law of arbitration that affects the immediate appealability of an order refusing to set aside an entry of default. Specifically, the fact the order effectively precludes the defaulting party's effort to arbitrate the claim does not change whether the order may be immediately appealed.

Our courts' statements that the law "favors" arbitration were never intended to elevate a contractual right of arbitration above the procedural rules of the court or other contractual provisions. *See* Richard Frankel, *The Arbitration Clause As Super Contract*, 91 Wash. U. L. Rev. 531, 533 (2014) ("Much of this arbitration favoritism is attributable to lower-court misinterpretation of thirty-year-old dicta . . . ."). Congress passed the Federal Arbitration Act in 1924 to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 105 S. Ct. 1238, 1242, 84 L. Ed. 2d 158, 164 (1985). "[The Act's] purpose was to place an arbitration agreement 'upon the same footing as other contracts, where it belongs,' and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." 470 U.S. at 219-20, 105 S. Ct. at 1242, 84 L. Ed. 2d at 164 (quoting H.R. Rep. No. 96, at 1 (1924)). Quoting the House Report on the Act, the Supreme Court explained,

> The need for the law arises from an anachronism of our American law. Some centuries ago, because of the jealousy of the English courts for their own jurisdiction, they refused to enforce specific agreements to arbitrate upon the ground that the courts were thereby ousted from their jurisdiction. This jealousy survived for so long a period that the principle became firmly embedded in the English common law and was adopted with it by the

American courts.  The courts have felt that the precedent was too strongly fixed to be overturned without legislative enactment, although they have frequently criticised the rule and recognized its illogical nature and the injustice which results from it.  *This bill declares simply that such agreements for arbitration shall be enforced*, and provides a procedure in the Federal courts for their enforcement.

470 U.S. at 219-20 n.6, 105 S. Ct. at 1242 n.6, 84 L. Ed. 2d at 164-65 n.6 (quoting H.R. Rep. No. 96 at 1-2) (emphasis added).

The Supreme Court of South Carolina first discussed a "federal policy favoring the arbitration of disputes" in *Trident Technical College v. Lucas & Stubbs, Ltd.*, 286 S.C. 98, 103, 333 S.E.2d 781, 784-85 (1985), relying on cases interpreting the Federal Arbitration Act.  Referring to a similar "policy" in South Carolina, we cited cases that simply recognized the right to contract for limited arbitration.  286 S.C. at 103-04, 333 S.E.2d at 785 (citing *Harwell v. Home Mut. Fire Ins. Co.*, 228 S.C. 594, 599, 91 S.E.2d 273, 275 (1956) (stating as to a limited arbitration agreement, "where the policy expressly or by necessary implication forbids the insured from bringing suit until after the amount of the loss has been submitted to arbitration or appraisal, compliance with such provision . . . is a condition precedent to the right of insured to maintain an action on the policy"); *Bollmann v. Bollmann*, 6 S.C. 29, 42-43 (1875) ("An arbitration proceeds from the consent of the parties.  The Court is but the instrument through which . . . effect can be given to their will.  It contemplates an adjustment of their controversy by a forum not bound by the strict rules of law, but permitted within certain limits to substitute their own mode of investigation in the place of that through which alone Courts of justice are allowed to exercise their functions.")).

Before *Trident Technical College*, South Carolina practiced a reluctance similar to that of the federal courts to enforce arbitration agreements because they deprived the courts of jurisdiction.  In *Episcopal Housing Corp. v. Federal Insurance Co.*, 269 S.C. 631, 239 S.E.2d 647 (1977), for example, we stated, "It is well established in South Carolina that general arbitration agreements which oust the South Carolina circuit court from jurisdiction are unenforceable as against public policy."  269 S.C. at 636, 239 S.E.2d at 649; *see also Childs v. Allstate Ins. Co.*, 237 S.C. 455, 460, 117 S.E.2d 867, 869-70 (1961) (stating "an [arbitration] agreement is upheld when it provides for arbitration of the amount of the loss" (a limited arbitration agreement)

but is "not binding upon the parties" if it "undertakes to require arbitration of the question of liability"); *Jones v. Enoree Power Co.*, 92 S.C. 263, 267, 75 S.E. 452, 454 (1912) ("An agreement to submit to arbitration all questions of law and fact that may arise under a contract is contrary to the public policy and void, as an attempt to oust the courts of their jurisdiction and establish in their place a contract tribunal.").

In *Episcopal Housing Corp.*, however, we finally accepted the supremacy of federal law permitting general arbitration agreements. "It is equally true," we stated, referring to the previously quoted statement that general arbitration agreements were unenforceable, "that under the supremacy clause of the United States Constitution . . . , this Court must recognize that federal statutes enacted pursuant to the United States Constitution are the supreme law of the land." 269 S.C. at 636, 239 S.E.2d at 649. In *Trident Technical College*, only eight years after *Episcopal Housing Corp.* and two years after the Supreme Court made its first "policy" statement in *Moses H. Cone*, we followed the federal courts by stating "this policy favoring the arbitration of disputes is also well established in South Carolina." 286 S.C. at 103, 333 S.E.2d at 785.

Neither the Supreme Court nor this Court, however, meant to give the law of arbitration such a special status that it would supplant state procedural law. Rather, these statements must be read in the context in which the Courts made them: overruling a longstanding, policy-based rule that arbitration agreements are unenforceable. In *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989), the Supreme Court explained, "There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." 489 U.S. at 476, 109 S. Ct. at 1254, 103 L. Ed. 2d at 498; *see also Dean Witter Reynolds*, 470 U.S. at 219-20, 105 S. Ct. at 1242, 84 L. Ed. 2d at 164 ("The [Federal Arbitration] Act, after all, does not mandate the arbitration of all claims, but merely the enforcement . . . of privately negotiated arbitration agreements."). Therefore, when considered in the proper context, our statements that the law "favors" arbitration mean simply that courts must respect and enforce a contractual provision to arbitrate as it respects and enforces all contractual provisions. There is, however, no public policy—federal or state—"favoring" arbitration. *See Toler's Cove Homeowners Ass'n, Inc. v. Trident Const. Co.*, 355 S.C. 605, 611, 586 S.E.2d 581, 584 (2003) ("There is no federal policy favoring arbitration under a certain set of procedural rules and the federal policy is simply to ensure the enforceability of private

agreements to arbitrate." (citing *Volt Info. Scis.*, 489 U.S. at 476, 109 S. Ct. at 1254, 103 L. Ed. 2d. at 498)).

In this case, the simple fact the master refused to set aside the entry of default, thereby preventing the defendants from requesting the court to compel arbitration, does not mean the order was immediately appealable. In a case like this, the circuit court should proceed to a determination of damages and the entry of judgment under Rule 55(b). From the final order of judgment, the aggrieved party may file an appeal challenging the circuit court's finding there was not good cause to set aside the entry of default, and may address any Rule 60, SCRCP, issue such as whether the aggrieved party demonstrated excusable neglect. *See ITC Commercial Funding, LLC v. Crerar*, 393 S.C. 487, 494-95, 713 S.E.2d 335, 338-39 (Ct. App. 2011) (considering—after default judgment—whether the defaulting party's neglect was excusable pursuant to Rule 60, SCRCP); *Thynes*, 294 S.C. at 154, 363 S.E.2d at 123 (stating "the denial of a motion" to set aside an entry of default for good cause "is not appealable until after final judgment" (citation omitted)).

Therefore, the court of appeals correctly determined the order refusing to set aside the entry of default was not immediately appealable. The court of appeals erred, however, in addressing the defendants' argument they did not waive their right to arbitration. *See Palmetto Constr. Grp.*, 428 S.C. at 267-70, 834 S.E.2d at 207-08. In the context of default, the concept of waiver is bound up in the Rule 55(c) determination of good cause and Rule 60(b) determinations such as excusable neglect. On appeal from a final judgment, the defendants may challenge any such determinations, and if that challenge is successful, may claim they did not in fact waive their contractual right to arbitration.

The decision of the court of appeals to dismiss the appeal is

**AFFIRMED AS MODIFIED.**

**BEATTY, C.J., KITTREDGE, HEARN and JAMES, JJ., concur.**